## PARIS v. REMINGTON RAND, Inc.
### No. 171.

Circuit Court of Appeals, Second Circuit.
Jan. 9, 1939.

**65**

Samuel E. Darby, Jr., and Darby & Darby, all of New York City (Floyd H. Crews, of New York City, of counsel), for appellant.

Nichol M. Sandoe, of New York City (Lucius E. Varney, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

On November 9, 1925, appellant's predecessor obtained an option from the appellee to purchase an invention which was defined as "a mechanism providing for the elimination of special tabulating cards between groups of record perforated cards in the operation of tabulating machines." This option was exercised and a contract made on March 1, 1927, which conveyed to appellant's predecessor full title to the invention, together with the right to take in its own name United States and foreign patents to be issued. Appellant's predecessor agreed to pay appellee $65 for each of such mechanisms which it sold, leased or otherwise placed in public use, and upon its discontinuance of manufacturing said mechanism or placing it in use, it agreed to reconvey the invention to appellee.

Patent No. 1,864,051 was issued for this mechanism on June 21, 1932, on an application filed August 13, 1927. Twenty-two foreign patents were issued in the name of appellant's predecessor or that of a foreign subsidiary. From the end of the year 1927 to the middle of the year 1932, the mechanism was used in the manufacture of and attached to machines already used by appellant's predecessor and which were referred to as Powers Model No. 1 Tabulating Machine patented under the Lasker patent of 1922 and all payments due pursuant to the terms of the contract were made therefor. The Powers Company was acquired by appellant in 1927. In 1932 the appellant discontinued the manufacture of this attachment made pursuant to the patent and thereafter made no further payments, although it still retains full title to the patents and pleads that it has not "released in any way its right under said Paris patent nor has it intended nor does it now intend to do so."

After such discontinuance of manufacture, appellant brought out Model No. 2 tabulating machine, which appellee contends has a built-in mechanism which took the place of the attachment and served the same purpose, that is, providing for the elimination of special tabulating cards between groups of record perforated cards in the operation of tabulating machines. Appellee claims that this built-in mechanism embodies the patented invention and requires payment of the royalties specified in the contract. The contract of purchase recognized that the mechanism was useful to appellant in the form of an attachment to its No. 1 machine; that patents were to be taken for the invention and the contract was drawn with the idea of use with its 1922 model. The contract, however, does not refer to the mechanism as an attachment but defines the invention broadly as a mechanism for eliminating the use of the special tabulating cards and provides for a stipulated sum of $65 to be paid on each such mechanism that the company might put out. Whether used on No. 1 machine or in No. 2 machine, there was a liability to pay therefor.

The appellant indicates that it intends to retain the invention, for it has not returned or offered to return it since the discontinuance of the manufacture of Model No. 1. It is sufficient for the purposes of this opinion that the invention is used in Model No. 2 and imposes liability upon appellant.

It is not claimed by appellee that he was the first to solve the problem of automatically sensing a change of designation in a tabulating machine by providing a mechanism which eliminates the use of special space and total cards. He concedes such a mechanism was in use by the appellant's predecessor as early as 1922; but appellee claims, and justifies his claim, that what he invented for this purpose and for which the patent was granted, was practically operative and

used. Its practical operation is represented in appellant's machine No. 2. Without it neither the attachment used with appellant's No. 1 machine nor the mechanism of its No. 2 machine would be practically operative as a commercial machine. By this mechanism in the No. 2 machine, the entire set of control pins are pushed forward and latched (against the pressure of all their springs) by the forward movement of the sensing pins in the analyzing unit, when no card is present in the sensing chamber; if this should happen either in the attachment or in the No. 2 machine, the mechanism would be subjected to excessive strains which could not be repeated many times without serious injury to it. Since a card will occasionally fail to feed properly into the sensing chamber while the machine is operating, it is just as essential that means be provided to prevent injury to the machine when a card fails to feed as it is to have the machine operative under normal conditions, that is, when a card is present in the sensing chamber.

To provide means for this purpose, appellee has latches or keepers (105) which are carried by a movable frame of which the plates (112) form the side members. This frame upon each analyzing stroke in the normal operation of the machine, that is, with the card present, moves into a position for the latches to lock each of the sensing pins that have passed through a hole in the card. It is essential to lock such sensing pins in the normal operation of the machine, for otherwise they will yield when coming in contact with the corresponding control pins and thus fail to operate said control pins which, in turn, govern the operation of the machine. When no card is present, it is undesirable to lock the sensing pins because that would make them effective to operate the control pins when their operation should not occur; and since if no card is present and nothing were provided to prevent the normal operation of the latch device, all the sensing pins would be locked and would thus operate all the control pins. This would strain the mechanism, resulting in a total to be taken when there had been no change of designation in the cards. To prevent either of these things happening in the absence of a card, means were devised and introduced by appellee of placing the latches under the control of special pins (182) called "no card" pins,

which would sense the presence or absence of a card in the sensing chamber or registration passage (97). Appellee so combined these pins and latches that when a card was present, the latches would be permitted to function normally; but, when no card was present it would be prevented from moving into operative position to lock any of the sensing pins.

This invention is described in claims 39 and 40 of the patent. Claim 39 combines a combination of three elements, (a) an analyzing unit comprising a plurality of rows of movable pins; (b) a latch device arranged to move in a position to lock certain of the pins; and (c) means automatically operative in the absence of a card during an analyzing stroke for preventing operation of said latching device. The analyzing unit is a reciprocating member or pin box (96) of the sensing mechanism; the movable pins are the sensing pins (89) in the pin box (96); the latch device comprises the plates (112) which operate during an analyzing stroke when a card is present to lock the sensing pins which have found holes in the cards and the "means automatically operative in the absence of a card during an analyzing stroke for preventing operation of the latch device" are the no card pins (182).

Claim 40 has a four element combination in addition to (a) and (b) of claim 39; there is (1) a stop of said latch device, and (2) a control pin normally engaging said stop and arranged to be moved automatically out of the path of said stop when the card is in registered position whereby said latching device is caused to function.

The analyzing unit, movable pin and latch device of this claim are the same as No. 39. The stop is the shoulder (186), the control pin is the "no card" pin (182). Appellant seeks to limit the scope of these claims, by construction, to embodiment in an attachment of a tabulating machine. However, claims 39 and 40 are found in machine No. 2 and this machine infringes.

Appellant's expert admitted that in appellee's mechanism, described in the patent and embodied in the attachment of No. 1 machine, there would be strains on the mechanism under such circumstances which would be relieved by the "no card" pin (182) and that the three element combination present in the appellee's mechanism and covered by claim 39 of the patent had several uses and was very

necessary to the appellee's machine. Appellant's expert also found the four element combination of claim 40 present in the appellee's mechanism.

The No. 2 machine with its built-in mechanism accomplished the same result as No. 1 did when used with the attachment. It was an advantage to build this mechanism into the machine rather than incorporate it in a special attachment because then only one analyzing unit was necessary. Where the attachment was used, two complete analyzing units were required, one in the attachment for sensing the changes in the holes in the designation control columns of the cards, and the other in the body of the machine for tabulating the data recorded in other columns. In the No. 2 machine, both of these functions were accomplished by a single analyzing unit.

But appellant argues that no stop, associated with the latch (190), is employed in the No. 2 machine. Consequently, it says, the pin (204) does not and cannot normally engage anything which is functionally or otherwise similar to the inventor's stop (106). The inventor's stop was not the lug (106) but the shoulder (186). It is the latter which moves out of engagement with the head (185) of the control pin (182) to cause the latch bars (105) to function. As the head (185) of the shoulder or stop (185) starts moving down together, there is a very slight clearance between the head and stop, and then the stop "moves in very slightly" against the head. Thus, while the inventor's control pin (182) does not normally engage the stop (186) at the very beginning of the downward stroke, it does so almost immediately thereafter. This is precisely what happens in the combination of claim 40 as that combination is embodied in No. 2 machine. In view of the admission of appellant's expert that the "no card" pin (204) in appellant's No. 2 machine is present in the same combination as the "no card" pin (182) of the appellee's attachment mechanism, namely, in each of the combinations set forth in claims 39 and 40 of appellee's patent, and the admission that as so organized in the No. 2 machine the pin (204) relieves mechanical strains which would otherwise be present, and prevents the analyzing pins from operating the total-taking means in the absence of a card, these are the same two functions which the "no card" pin of the invention performs.

The only reason asserted by appellant for insisting that No. 2 machine contains no part of the appellee's invention is that the No. 2 machine actually does take a total in the absence of a card, which appellant admits to be an undesirable feature of the machine; and that this happens because of the action of a bail (1611) which, with its associated parts, is present in the No. 2 machine, but which has no counterpart in appellee's mechanism. But the bail (1611) has the effect of neutralizing as far as a total-taking is concerned, what would otherwise be the effect of the no card pin (204) upon the upward stroke of the movable pin box in the absence of a card. Since the stroke of the pin box, when a card is present, is the tabulating stroke, and the stroke of the pin box, when a card is not present, is in effect a space and total stroke, which means that this neutralizing effect occurs in the absence of a card, the combination of 39 and 40 of the patented mechanism are mechanically present in No. 2 machine and concededly operate to prevent strains. The other function, that of preventing a total-taking in the absence of a card, though present and available, is impaired and neutralized by other mechanism present in the No. 2 machine. But this impairment of function does not avoid infringement. General Electric Co. v. Alexander, 2 Cir., 280 F. 852, 855.

Appellant introduced the Lasker patent No. 1,534,595 of 1925, intending thereby to limit the scope of claims 30 and 40 of appellee's patent. We think, however, that it is sufficient to say that the Lasker patent did not so limit the appellee's invention as to avoid the charge that his mechanism is being used in machine No. 2. The appellant first took an option on this invention, later made a purchase of it and financed and assisted the grant of this patent to appellee. It wanted the patent issued and it was granted for the mechanism there disclosed. It intended to use it irrespective of the state of the prior art. Appellant cannot now invoke rules of patent construction which would change the monopoly claimed by it in its public use. We need not inquire therefore whether the Lasker patent embodied claims 30 and 40. It is sufficient to say that machine No. 2 does embody them and infringe both claims. Since it is using the patented

mechanism for which it promised to pay a royalty per machine, the judgment below as to the royalties and interest was proper.

 The special master appointed fixed an amount of damages for additional income tax which appellee would be obliged to pay in 1938 because it recovered this judgment in that year, it being the fact that appellee would by this judgment receive a larger sum, the total for the royalties due for past years, whereas, if the royalties were paid annually, as provided by the contract, the income taxes for each year would be less. To calculate such an item of damages permits of wide speculation. If such damages are awarded, the amount of tax differential will depend on the method by which appellee has kept his books—cash or accrual basis. Damages would vary in each instance. Another consideration would be the taxpayer's financial position and other earnings of the year which would enter into the calculations so that it would be highly speculative to find the amount of the damages due to appellee's breach of contract. Such variation of tax is not a consequential damage flowing from the breach of contract. It follows that the damages awarded by the decree must be reduced by the amount of income tax differential awarded, namely, $23,860.31.

The decree is modified and affirmed.