Irving S. COOPER, Plaintiff,

v.

HALLGARTEN & CO., Defendant.

United States District Court
S. D. New York.
Jan. 22, 1964.

———

**483**

(3) all writings and records of gas or oil ventures in which plaintiff may have participated other than those referred to in the complaint from 1950 to the commencement of this action (1963). Plaintiff also seeks an order to quash a subpoena duces tecum which directs the production of the foregoing documents.

The action is one for recission of certain gas and oil leasehold interests which plaintiff alleges he purchased and retained as a result of fraudulent misrepresentations by the defendants, who, plaintiff charges, acted as his investment advisors and brokers in the purchases. He seeks to recover the consideration paid and also punitive damages. The various claims are grounded upon alleged violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the New York General Business Law, and common law fraud and deceit. The defendants deny the charges and plead affirmative defenses of statute of limitations, laches and estoppel.

■■■ First, as to the tax returns. Public policy favors the nondisclosure of income tax returns. Criminal sanctions for unauthorized disclosure underscore this policy.[1] The courts are not altogether in accord as to whether or not this public policy has cloaked the returns with a privilege in favor of taxpayers who are litigants in private suits.[2] But assuming that a litigant's tax returns are not privileged and are subject to pretrial procedure, the public policy against disclosure cannot be ignored; it must be taken into account together with the

Jackson, Nash, Brophy, Barringer & Brooks, New York City, for plaintiff; Lawrence P. McGauley, New York City, of counsel.

Willkie, Farr, Gallagher, Walton & Fitz Gibbon, New York City, for defendant; Mark F. Hughes, William T. Sullivan, Laurence G. Bodkin, Jr., New York City, of counsel.

WEINFELD, District Judge.

The plaintiff moves for a protective order pursuant to Rule 30(b) of the Federal Rules of Civil Procedure (1) limiting any inquiry upon his deposition as to, and (2) excluding production upon his deposition of:

(1) his income tax returns and other financial records reflecting his gross income for the years 1958 through 1963:

(2) memoranda and other writings of any tax consultant from 1950 through 1963 relating to the "tax advantages or consequences of participation in oil or gas ventures"; and

1. Int.Rev.Code of 1954 provides, in part:
   "§ 7213. Unauthorized disclosure of information
   "(a) Income returns.—
   "(1) Federal employees and other persons.—It shall be unlawful for any officer or employee of the United States to divulge or to make known in any manner whatever not provided by law to any person the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return * * *."

See Baim & Blank, Inc. v. Bruno-New York, Inc., 17 F.R.D. 346 (S.D.N.Y. 1955).

2. Compare, e. g., Fulenwider v. Wheeler, 262 F.2d 97 (5th Cir. 1958), with Trans World Airlines, Inc. v. Hughes, 29 F.R.D. 523 (S.D.N.Y.1961); Bush v. Chicago B. & O. R. R., 22 F.R.D. 188 (D.Neb.1959). See cases cited in Baim & Blank, Inc. v. Bruno-New York, Inc., 17 F.R.D. 346, 348 n. 1 (S.D.N.Y.1955).

policy which favors liberal pretrial discovery. Giving appropriate weight to each, the production of tax returns should not be ordered unless it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder, and further, that there is a compelling need therefor because the information contained therein is not otherwise readily obtainable.[3] The defendants contend that they have made the required showing to justify the production of the tax returns upon plaintiff's examination.

Opposition to the plaintiff's motion centers about the fact, which does not appear to be disputed, that the plaintiff, a surgeon, enjoyed a substantial income from his professional activities which put him in a very high income tax bracket, and by reason thereof he sought and engaged in highly speculative purchases such as those which are the subject matter of this suit. Stripped to its essentials, the argument is that in view of both the substantial tax advantages incident to such purchases (deduction from income of original investment, drilling costs, depletion allowances and capital gains treatment upon sale) and the high rate at which the money invested would otherwise have been taxed, the purchases by the plaintiff of the gas or oil interests were made in substance with the Government's money and that by going into the ventures, despite the risk, plaintiff actually stood to better his cash position. In other words, the defendants argue that the purchases by plaintiff were made in the years in question with money otherwise taxable at very high rates— in effect that the tax structure so favored the plaintiff that he was indifferent to the high degree of risk of loss involved. Based upon this premise the defendants urge that plaintiff's financial records and tax returns would reveal that in fact his purchases of the lease

interests involved no real financial risk to him, which, in turn, so the defendants contend, would not only support their denial of fraudulent misrepresentation, but negative any claim of reliance by the plaintiff thereon. The defendants further urge that the tax returns and other financial records are relevant on the issues of damages, estoppel and laches.

The Court is not persuaded that any of these grounds furnishes a basis for random disclosure of the plaintiff's tax returns.

There can be little doubt of the high degree of risk and the speculative nature of the gas and oil ventures, or that plaintiff sought a tax-favorable outlet for his funds; as much appears to be conceded by the moving papers. In any event, plaintiff may be fully questioned with respect thereto as tending to support not only the defendants' denial of misrepresentation, but also to rebut plaintiff's claim of reliance thereon. However, plaintiff's professional income is not in issue in this case; neither is his income, if any, from rents, interest, dividends, royalties, or profits on his investments, all of which should be reflected in his returns. These have no bearing on the issues of reliance or the alleged representations. The plaintiff's alleged high tax rate may conceivably have some bearing on his motivation in engaging in the transactions and to this extent is a circumstance which may be considered on the probability of his alleged reliance upon the claimed representations. Accordingly, plaintiff may be questioned upon his deposition as to his highest tax bracket in each year of the transactions in question, but not as to the details of his income and how that bracket was reached.

His income from the specific ventures which are the subject matter of this suit can readily be determined from the records and documents which plaintiff is

---

3. Even in cases where income is directly in issue, it is not an abuse of discretion to deny production of the income tax returns. Fulenwider v. Wheeler, 262 F.2d 97 (5th Cir. 1958).

required to produce under item 6. This calls for all records of payments and income in connection with the operation of each well. Those records will also be available to permit questioning of him to establish, as defendants state it, that he "was fully aware of the successes and the number of failures of the Texkan wells, [those in issue] and the amount he was receiving from each successful well."[4] Since the basic information is readily obtainable from these records of the plaintiff, the tax returns are not required for that purpose.

The defendants also urge that they be permitted to examine plaintiff's tax returns to support their defenses of estoppel and laches, the theory here being that despite full knowledge of the failure of the Texkan wells, plaintiff continued to speculate in such ventures; that such continued speculation, when he was aware of losses, not only tends to establish tax motivation and lack of reliance, but supports the plea of estoppel. In this instance, too, plaintiff's other records are available under the notice and subpoena and will indicate when he ascertained the losses. Plaintiff may, of course, be questioned to establish his knowledge of the success and failure of the individual wells and his continued purchases even after losses were known to him.

The defendants make the further argument that returns are relevant on the issue of damages. While the various claims are based upon different theories, essentially the plaintiff seeks to rescind all the purchases of the oil and gas interests and to recover the consideration he parted with in reliance upon the claimed fraudulent representations.[5] Each claim alleges the tender of the gas

and oil interests to the defendants.[6] The defendants contend, and correctly so, that plaintiff cannot rescind unless he tenders both his interest in the leases and such gains as were realized.[7] They allege that plaintiff, at the time of commencement of suit, had already realized over $80,000 with the prospect of still further distributions from successful wells. Accordingly, the defendants are entitled to the information as to the amounts received, for it is relevant, but again the records to be produced under item 6 of the notice already referred to should provide the details. Thus there is no showing of need for exposure of the tax returns, in addition to those records, to obtain the data as to the amounts realized by the plaintiff from the successful wells. Nor are the tax returns required to verify the records, particularly so since it appears that defendants themselves supplied the data to the plaintiff.[8] And if, upon his examination, it appears his records are inaccurate, then leave is granted to reapply for production of the returns for verification of the correct amounts.

■ The defendants also advance the argument that apart from the amount of the plaintiff's earnings, the income tax treatment of losses and revenues from the ventures is relevant on the issue of damages and can only be shown by the returns. They seem to suggest that although plaintiff paid definite sums for each venture, if he wrote off some of these items and also availed himself of depletion allowances, then such tax advantages which plaintiff derived by reason thereof would, in the event he prevails, be deductible from the consideration which he paid. The fact that the revenue laws permitted plaintiff to make

4. Opposing affidavit, p. 6.

5. See Sager v. Friedman, 270 N.Y. 472, 1 N.E.2d 971 (1936).

6. For the importance of tender, see Weigel v. Cook, 237 N.Y. 136, 142 N.E. 444 (1923); Vail v. Reynolds, 118 N.Y. 297, 23 N.E. 301 (1890).

7. Securities Act of 1933 § 12(2), 48 Stat. 84 (1933), 15 U.S.C. § 77l(2) (1958).

8. The opposing affidavit indicates that defendants did a great deal of bookkeeping with reference to the ventures and advised plaintiff as to the effect to be given them in his returns. Opposing affidavit, p. 6, exhibit A.

486

deductions for drillings or to receive depletion allowances has no bearing on the issue of whether plaintiff is entitled to receive the return of the amounts he paid for interests in the oil and gas leases. No authority has been submitted by the defendants to support their position, and those cases which have considered kindred matters point in a different direction.[9] If plaintiff should recover the sums that he paid, they no doubt would be subject to appropriate tax treatment in his tax return as against the deductions and allowances taken in the earlier years. Moreover, if the defendants' position were valid, it would follow that if two individuals each put up the same sum of money for oil and gas ventures as a result of a third person's tortious conduct and separately brought suit to rescind, if each were in a different tax category, one in a very high tax bracket and the other in a much lower one, then the tort-feasor would return to the high income taxpayer a much lower amount than to the low bracket taxpayer. This does not seem to be the law. It is to be remembered that this is an action for recission and not one where plaintiff's earnings are in dispute.

■ In sum, with regard to the question of reliance and damages and the issues posed by the defenses of estoppel and laches, there is no showing of compelling need for production of the tax returns; accordingly, with respect to item 2, plaintiff's motion is granted.

■ Second, the plaintiff seeks to exclude from his examination the production of memoranda and other writings of any tax consultant (other than an attorney) relating to tax advantages or consequences of participation in oil or gas ventures. These may establish, as defendants contend, that plaintiff was a sophisticated speculator and also his tax oriented purpose in making the purchases. They may, to that extent, have some evidential value on whether or not he relied upon the claimed misrepresentations. This branch of the plaintiff's motion is denied.

■ Finally, defendants seek all records of oil and gas ventures (other than those which are the subject matter of this suit) which plaintiff may have participated in over a thirteen-year period. These have no bearing on the issues of representation, reliance or damages. Plaintiff, however, may be questioned generally as to his prior experience in making purchases of the kind involved here, the number of such transactions, and the results thereof, since again they go to his knowledge and awareness of the high degree of risk and may serve to repel his claim of reliance in making the purchases at issue. But the precise details of the earlier and unrelated transactions are not relevant. Plaintiff's motion with respect to item 8 is granted.

Settle order on notice.

---

9. McWeeney v. New York, N. H. & H. R. R., 282 F.2d 34 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960); Stokes v. United States, 144 F. 2d 82 (2d Cir. 1944); Paris v. Remington Rand, Inc., 101 F.2d 64 (2d Cir. 1939).