**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**CYMATICOLOR CORPORATION, Joel Green, Louis Fisher, John J. Connolly, Jack R. Driben, Morton Balon, Martin I. Saposnick, and Irwin N. Schneider, Defendants.**

No. 84 Civ. 4508 (DNE).

United States District Court, S.D. New York.

July 8, 1985.

**546**

Steven Rosenberg and Howard Groedel, S.E.C., Washington, D.C., for plaintiff; Anne C. Flannery, S.E.C., New York City, of counsel.

Finkelstein, Thompson, Levenson & Lewis, Washington, D.C., for defendants; Burton H. Finkelstein and Douglas G. Thompson, Washington, D.C., of counsel.

Bressler, Director & Rothenberg, New York City, for defendant Joel Green; David J. Olesker, New York City, of counsel.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Plaintiff, Securities and Exchange Commission ("SEC"), brought this action alleging violations of the securities laws by a corporate defendant and a number of individual defendants. Two discovery disputes have arisen involving the SEC and defendant Joel Green ("Green"). Green is alleged to have manipulated the market price of Cymaticolor Corporation ("Cymaticolor") stock by, among other means, buying and selling Cymaticolor stock through his own account and the accounts of third parties and lending money to third parties, including defendant Louis Fisher ("Fisher"), to finance the purchase of Cymaticolor stock. The SEC alleges that Green realized substantial proceeds from the market manipulation.

The first discovery dispute arose during the SEC's deposition of the accountant who prepared Green's individual tax returns

from 1980 to 1983. The SEC requested that the accountant produce any copies of Green's tax returns for those years in his posession. At the deposition, Green's counsel asserted that Green did not wish the accountant to release the copies of the tax returns. The accountant complied with these wishes. The SEC has moved for an order to compel the accountant to produce the tax returns.

The second dispute centers on Green's refusal to respond to various interrogatories on the basis of his fifth amendment privilege against self incrimination. Green has asserted, while invoking his fifth amendment privilege, that he reserves his right to waive his privilege at a later time. The SEC seeks an order precluding Green from introducing at trial the matters about which he has asserted the fifth amendment privilege and compelling Green to make a decision regarding a waiver of his fifth amendment privilege now.

The motion for the production of the tax returns and the motion for an order of preclusion are granted.

## I. PRODUCTION OF TAX RETURNS

■ The SEC seeks an order compelling defendant Green's accountant to produce Green's tax returns that are in his possession. The court undeniably has jurisdiction to compel the production of documents by a non-party as part of the non-party's deposition. Fed.R.Civ.P. 37(a)(1) & 45. The production of tax returns, however, presents a delicate situation. While tax returns are not privileged, courts have been reluctant to order their routine disclosure as a part of discovery. *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y.1979). The decision to disclose the returns involves a balancing of the policy of liberal discovery against the policy of maintaining the confidentiality of tax returns. *Sharp v. Coopers & Lybrand*, 83 F.R.D. 343, 352 (E.D.Pa.1979).

■ Section 7216 of the Internal Revenue Code of 1954 sets forth the conditions for the production of tax returns by tax return preparers. The statute provides:

(a) *General Rule.* Any person who is engaged in the business of preparing, or providing services in connection with the preparation of, returns of the tax imposed by Chapter 1, or declarations or amended declarations of estimated tax under section 6015, or any person who for compensation prepares any such return or declaration for any other person, and who:

(1) discloses any information furnished to him for, or in connection with, the preparation of any such return or declaration, or

(2) uses any such information for any purpose other than to prepare, or assist in preparing, any such return or declaration,

shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

(b) *Exceptions.*

(1) Disclosure—Subsection (a) shall not apply to a disclosure of information if such disclosure is made—

(a) pursuant to any other provision of this title, or

(b) pursuant to an order of a court.

Clearly, a court may order the disclosure of tax returns pursuant to the statute. *Mitsui & Co. v. Puerto Rico Water Resources Authority*, 79 F.R.D. 72 (D.P.R. 1978). A two-prong test must be satisfied for the court to order disclosure of tax returns: first, the court must find that the returns are relevant to the subject matter of the action; and second, that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable. *Smith v. Bader, supra*, 83 F.R.D. at 438.

■ The SEC contends that the returns are relevant to this case in two respects: first, the returns may indicate whether Green made any profit from the sale of stock in Cymaticolor; and second, the returns are relevant to alleged loans made by Green for the purchase of Cymati-

color stock.[1] The SEC states that the information is not readily available elsewhere.

### Profit on Cymaticolor stock

The SEC argues that the returns would provide information regarding Green's profit on the sale of Cymaticolor stock during the alleged market manipulation. The profit, it is claimed, would be relevant in establishing a possible motive for the alleged manipulation of Cymaticolor stock as well as determining any amount to be disgorged should Green be found guilty of manipulation.

Green does not dispute that information regarding profit is relevant, but contends that the SEC and not Green placed the information allegedly contained in the return at issue and that this precludes the production of the returns. Whether the SEC or the defendant placed the tax information in the return in issue is not dispositive. Once the court determines that the information is relevant to the issues to be tried and cannot be obtained readily elsewhere, disclosure is warranted.[2]

The second prong of the test for disclosure is whether the information is readily available elsewhere. Green contends that information regarding his activities in Cymaticolor stock is available from the trading records provided to the SEC as well as Cymaticolor proxy statements and annual reports. These alternatives will not provide the same information that would be contained in the returns. While it is true that the trading records and other corporate documents would provide some information regarding Green's trading activity, the trading records provided may not represent the total extent of Green's trading activity because trades could have been made through accounts in foreign countries or in the names of third parties. Green's contention is especially troublesome given his refusal to identify all of his transactions in Cymaticolor stock.[3] Green has thus failed to satisfy the court that information may be obtained elsewhere. *See Eastern Auto Distributors, Inc. v. Peugeot Motors of America, Inc.,* 96 F.R.D. 147, 149 (E.D.Va.1982); *Biliske v. American Live Stock Insurance Co.,* 73 F.R.D. 124, 126 n. 1 (W.D.Okla.1977).

### Loans to purchase Cymaticolor stock

The SEC also contends that the returns will provide information regarding loans made by Green to third parties to finance the purchase of Cymaticolor stock. Green counters by stating that there is "no meaningful connection between what is or is not reflected on [the] returns concerning interest payments and bad debt deductions and the possible existence (or nonexistence) of loans, payments, or gifts made by Green. What the returns do or do not reflect could be based on an almost unlimited number of factors." Opposition of Defendant Joel Green to Plaintiff's Motion to Compel Production of Documents at 13. Green further contends that this asserted basis for disclosure is no more than an excuse for a general fishing expedition into the returns. The court does not accept these arguments as a basis for denying discovery of the returns.

Green's contentions regarding what might or might not be found in the returns

---

1. Such information would be contained in the returns if the alleged transactions did in fact occur and if the returns were truthfully and accurately prepared to reflect such transactions.

2. Courts have considered whether the party seeking to prevent disclosure of the returns has placed income in issue. This is apparently an alternative ground for disclosure even if the two requirements of relevancy and availability noted above are not found. *See Biliske v. American Live Stock Insurance Co.,* 73 F.R.D. 124, 126 n. 1 (W.D.Okla.1977); *Mitsui & Co. v. Puerto Rico Water Resources Authority,* 79 F.R.D. 72, 81

(D.P.R.1978); *Maldonado v. St. Croix Discount, Inc.,* 77 F.R.D. 501, 503 (D.V.I.1978); *see also Federal Savings & Loan Insurance Corp. v. Krueger,* 55 F.R.D. 512, 514 (N.D.Ill.1972) (under prior law where returns were considered confidential, returns disclosed only where litigant himself tenders an issue as to the amount of his income).

3. Green has invoked his fifth amendment right against self incrimination when asked to identify all transactions involving Cymaticolor stock.

and possible explanations for the contents of the returns do not bar disclosure. The returns may contain information which is relevant to this case and Green will have an opportunity to present his interpretation of the returns if they are introduced into evidence. It is certainly not mere speculation on the part of the SEC that the returns may contain information regarding loans in light of the statements by defendant Fisher that such loans were made. Fisher is alleged to have received loans to finance the purchase of Cymaticolor stock.

Green's claim that the SEC is embarking on a fishing expedition into the returns is clearly an improper ground to avoid discovery. As the Supreme Court has stated "[n]o longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). Further, the returns provide the only efficient means of obtaining the information. Green's suggestion that the SEC depose any person suspected of receiving a loan which is not a viable alternative. Further, even if the SEC were to depose everyone it now believes received loans from Green, this would not provide the same information as the returns. The SEC is not certain that it knows of all of the persons who received loans, thus the returns may be the only readily available source of the identity of those who received loans and gifts.

While the court finds that disclosure is warranted in this case, there are procedures that will minimize the impact of the disclosure. The court will consider a protective order if an application is made.

## II. PRECLUSION ORDER

Green has declined to answer a number of interrogatories based on his fifth amendment privilege against self incrimination. Green has included in his responses to the interrogatories a statement that he reserves his right to waive his fifth amendment privilege at a later time and answer the interrogatories. The SEC seeks an order compelling Green to make a decision now regarding a waiver and precluding Green from using any information at trial which he has invoked the fifth amendment right. Green does not deny that such an order is appropriate but rather objects to the timing of the SEC's motion and the scope of the order requested.

### Scope of Preclusion Order

■ The SEC is seeking a total preclusion order that would would prevent Green from offering into evidence any matter relating to the factual bases for his denials and defenses as to which he has asserted his fifth amendment rights. Green counters that the order should be limited to evidence that the SEC has not received from other sources. Green contends that such a limited preclusion order would not result in any surprise at trial if such evidence is introduced because the SEC would already have such evidence in its possession. This contention is rejected.

Green's proposal regarding a limited order of preclusion is contrary to one of the purposes of discovery [which] is to ascertain the position of the adverse party on the controverted issues. C. Wright, Law of Federal Courts 543–44 (4th ed. 1983); *accord Baim & Blank, Inc. v. Philco Distributors, Inc.*, 25 F.R.D. 86, 87 (E.D.N.Y. 1957) (purpose of discovery is not only to determine facts but "to determine what the adverse party contends they are, and what purposes they will serve"); *see Weiner v. Bache Halsey Stuart, Inc.*, 76 F.R.D. 624 (S.D.Fla.1977). Thus, it is irrelevant that the party seeking discovery already knows the facts as to which he seeks discovery. C. Wright, *supra*, at 543–44. While the limited preclusion order would eliminate surprise regarding the existence of the evidence, surprise may still occur regarding the defendant's theory and use of the evidence. Such a limited preclusion order might reduce the trial to a "game of blindman's buff" and less of "a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

Thus, the preclusion order must include evidence that the SEC may have obtained from other sources.

Green also contends that a total preclusion order would make the assertion of the privilege "costly." The court does not deny that it may not make the invocation of a party's fifth amendment right costly, *Spevack v. Klein,* 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967), however Green's risk of losing this case on the merits without the use of the evidence is not the type of cost that is prohibited, *see Kimm v. Rosenberg,* 363 U.S. 405, 408, 80 S.Ct. 1139, 1141, 4 L.Ed.2d 1299 (1960) (per curiam); 8 C. Wright & A. Miller, Federal Practice and Procedure (Civil) § 2018, at 149 (1970). *See also Baxter v. Palmigiano,* 425 U.S. 308, 318–20, 96 S.Ct. 1551, 1557–59, 47 L.Ed.2d 810 (1976) (claim of privilege does not preclude adverse inference against party in civil action). *Compare Wehling v. Columbia Broadcasting System,* 608 F.2d 1084 (5th Cir.1979) (court cannot dismiss the complaint or impose sanctions).

In light of the defendant's invocation of his fifth amendment rights regarding the basis of his defenses and denials, a total preclusion order is appropriate. *See SEC v. Benson,* No. 84 Civ. 2263 (PNL), slip op. at 3–4 (S.D.N.Y. Apr. 9, 1985); *International Telephone and Telegraph Corp. v. United Telephone Company of Florida,* 60 F.R.D. 177, 185–86 (M.D.Fla.1973).

*Timing of the decision to waive fifth amendment privilege*

█ Finally, there is the issue of the timing of Green's decision regarding his fifth amendment privilege. Green would prefer to wait until the later of thirty days prior to the close of discovery or ninety days prior to trial to make his decision. Green asserts that requiring him to make a decision before this time would give the SEC an unfair and unnecessary advantage at the expense of his constitutional rights. The court, however, cannot accept such a delay because it will affect the entire discovery process.

Green has asserted his fifth amendment privilege regarding basic aspects of the case—his defenses and denials. Discovery obtained regarding these areas will have a definite impact on the course of the SEC's discovery and should be obtained at the outset of discovery. It is likely that the SEC will pursue different avenues of discovery depending on Green's decision. Green states that he does not want to make a decision "without fully knowing the extent of either the SEC's case against him or the existance of other exculpatory evidence." Such an argument was rejected in *SEC v. Micro-Therapeutics, Inc.,* No. 78 Civ. 893 (MJL), slip op. at 3–4 (S.D.N.Y. Aug. 1, 1979) (memorandum and order of Magistrate Raby). The court adopts the magistrate's reasoning here. This action has been pending for approximately one year so that counsel has had an abundant opportunity to apprise himself of the basis of the SEC's case. Under these circumstances, the SEC is entitled to an order of preclusion. Green has ten days following the date of this opinion to make an election regarding his privilege. Green shall be barred from offering into evidence any matter relating to the factual bases for his denials and defenses as to which he continues to assert his fifth amendment rights at that time.

## CONCLUSION

Plaintiff's motion for production of tax returns from the defendant's accountant is granted. Plaintiff's motion for an order of preclusion as to any matter relating to factua¹ bases for his denials and defenses is granted as to all matters that defendant Green maintains his fifth amendment privilege ten days from the date of this opinion.

SO ORDERED.