Karen GATTEGNO, Plaintiff,

v.

**PRICEWATERHOUSECOOPERS,
LLP, Defendant.**

Civ. No. 3:00CV1399 (JCH).

United States District Court,
D. Connecticut.

Dec. 6, 2001.

Craig Thomas Dickinson, Hartford, CT, Jacques J. Parenteau, New London, CT, for plaintiff.

James C. Riley, Greenwich, CT, William M. Sunkel, Stephen L. Sheinfeld, New York City, for defendant.

## CORRECTED [1] RULING

FITZSIMMONS, United States Magistrate Judge.

The issue before the court is whether plaintiff should be compelled to disclose her and her husband's joint tax returns pursuant to a discovery request from defendant. The issue is before the court by way of defen-

---

1. The court's previous ruling contained two scrivener's errors. Footnote 10 of the original opinion noted that "... plaintiff believes that it is unnecessary and inappropriate to disclose [her husband's] information to defendant, given that *defendant's* income is irrelevant to this case." (Emphasis added.) That footnote, which is now footnote 11, should (and now does) read, "given that *plaintiff's husband's* income is irrelevant to this case." (Emphasis added.) Additionally, a typographical error appearing on page 5 is now corrected. No other corrections or modifications were made to this decision.

dant's motion to compel [doc. # 25].[2] Plaintiff has submitted the tax returns to the court for an *in camera* inspection "to determine whether they should be produced to Defendant or subject to a protective order ..." [*See* Letter from Attorney Dickinson to the court, dated June 27, 2001, at p. 1.[3]] For the reasons discussed herein, the court determines that a protective order is warranted with respect to the tax returns. Therefore, the motion to compel [**doc. # 25**] is **DENIED**.

## DISCUSSION

The decision whether to allow discovery of federal income tax returns involves a conflict between two important competing interests: the taxpayer's privacy expectations and the policy favoring broad and liberal pretrial discovery. No statute or regulation resolves the conflict. Instead, the courts have fashioned several tests or standards of discoverability, among which is the notion that tax returns are protected by a "qualified privilege."

Before 1977, tax returns and return information were public information, although taxpayers did have some expectation of privacy given the limited circumstances under which such information was made available. Despite the limited availability, however, numerous abuses occurred. In response, Congress made tax returns "confidential" when it amended section 6103 of the Internal Revenue Code ("IRC") as part of the Tax Reform Act of 1976 ("1976 Act"). *See* 26 U.S.C. 6103(a).

The private nature of tax returns was recognized even before the 1976 Act, however, and was developed largely by district courts in this Circuit. In fact, this court was one of the first courts in the nation to address this issue. In *Connecticut Importing Co. v. Con-tinental Distilling Corp.,* 1 F.R.D. 190, 192 (D.Conn.1940), the court held that nothing in § 6103 or the regulations precluded a court of competent jurisdiction from requiring a disclosure of a tax return by the taxpayer in connection with civil litigation to which the taxpayer is a party. *But see O'Connell v. Olsen & Ugelstadt,* 10 F.R.D. 142, 142 (N.D.Ohio 1949) (holding that, absent word from Congress or the Treasury, returns were immune from discovery). Most courts agreed with the *Connecticut Importing* decision that *section 6103* was not a valid basis for protection, but, following *O'Connell* in part, many courts began to deny discovery based on grounds other than *statutory* privilege. Thus, by the time the Supreme Court confirmed the validity of the *Connecticut Importing* holding, by announcing in dictum that section 6103 was inapplicable to private litigants, *see St. Regis Paper Co. v. United States,* 368 U.S. 208, 218–19, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961), the courts had already begun to recognize a measure of protection—whether or not termed a "qualified privilege"—independent of any statute.

Like *Connecticut Importing,* the other early cases that framed the standards in this area were also from this Circuit. For example, in *Kingsley v. Delaware, Lackawanna & Western Railroad,* 20 F.R.D. 156, 158 (S.D.N.Y.1957), the court held that discovery of tax returns was permitted "where a litigant himself tenders an issue as to the amount of his income." Seven years later, however, that court issued a very different rule in the now oft-cited *Cooper v. Hallgarten & Co.,* 34 F.R.D. 482 (S.D.N.Y.1964). In *Cooper,* the court attempted to balance the policy favoring complete discovery and the policy disfavoring disclosure of confidential taxpayer information. It held that the production of tax returns should not be ordered

---

**2.** In the motion to compel, defendant seeks production of items such as: (i) appointment, diaries and calendars for any period outside plaintiff's employment with defendant; (b) income tax returns; and (iii) documents concerning any treatment plaintiff sought or received for mental or emotional distress. Defendant also seeks more specific responses to various interrogatories. The plaintiff, however, explained to the court that she has produced all responsive documents in her possession other than the tax returns, and that she answered broadly-worded interrogato-ries broadly and responded to narrower questions commensurately. After reviewing the motions, memoranda and letters submitted by the parties, and hearing oral argument, the court agrees with plaintiff. Thus, the only issue remaining is whether the tax returns must also be disclosed.

**3.** This letter is to be **docketed by the clerk** simultaneously with this ruling.

unless (1) "it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder," and (2) "there is a compelling need therefor because the information contained therein is not otherwise readily obtainable." *Id.* at 484.

Many subsequent decisions have applied this two-part test, although often with differing standards and burdens of proof. *See, e.g., Eastern Auto Distributors v. Peugeot Motors of America, Inc.,* 96 F.R.D. 147, 148–49 (1982) (party seeking discovery need only show "some" relevance; opponent bears the burden of showing it is available from another source). Some courts have followed the two-part *Cooper* test while acknowledging the existence of an alternative *Kingsley*-like test. *See United States v. Bonanno Organized Crime Family of La Cosa Nostra,* 119 F.R.D. 625, 627 n. 2 (E.D.N.Y.1988) (citing *S.E.C. v. Cymaticolor Corp.,* 106 F.R.D. 545, 548 n. 2 (S.D.N.Y.1985)). There is also a significant disagreement as to whether the measure of protection afforded to tax returns is aptly characterized as a "privilege," and this disagreement arises between different courts, *compare Bonanno,* 119 F.R.D. at 627 (despite magistrate's reference to a "qualified privilege" for tax returns, "judicial consensus is that ... tax returns are not privileged") *with Eastern Auto Distributors, Inc. v. Peugeot Motors of America, Inc.,* 96 F.R.D. 147, 148 (E.D.Va.1982) ("a 'qualified' privilege emerges from the case law that disfavors the disclosure of income tax returns as a matter of general federal policy"), in different opinions by the same court, *compare S.E.C. v. Cymaticolor Corp.,* 106 F.R.D. 545, 547 (S.D.N.Y.1985) ("tax returns are not privileged") *with Lieberman v. John Blair & Co.,* No. 86 Civ. 9077(SWK), 1989 WL 135261, *2 (S.D.N.Y. Nov. 1, 1989) ("qualified privilege attaches to federal and state tax returns"), and even within the same opinion, *see Versatile Metals, Inc. v. Union Corp.,* Civ. A. No. 85–4085, 1987 WL 5290, *4–5 (E.D.Pa. Jan. 7, 1987) (first noting that a "confidential privilege" attaches to tax returns, but next noting that other courts have "similarly stated" that "[a]lthough there is no privilege protecting

the production of tax returns, courts have been reluctant to order routinely their discovery") (citations and internal quotations omitted).

■ This court believes that the additional protection afforded tax returns in civil discovery is aptly characterized as a "qualified privilege." [4] First, Congress specifically left to the courts, "in light of reason and experience," the power to recognize evidentiary privileges. *See* Fed.R.Evid. 501. *See also Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (interpreting Rule 501 as a congressional endorsement of further case-by-case development of the federal common law of privilege). This applies to privileges from discovery as well as traditional evidentiary privileges. *See, e.g.,* Fed.R.Evid. 1101(c) ("The rule with respect to privileges applies at all stages of all actions, cases, and proceedings"). *Cf. United States v. Reynolds,* 345 U.S. 1, 6, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (stating the converse: "[w]e think it should be clear that the term 'not privileged,' as it is used in Rule 34, refers to 'privileges' as that term is understood in the law of evidence"); *EEOC v. University of Notre Dame,* 715 F.2d 331, 334–35 (7th Cir.1983) (discussing Rule 501 in the context of discussing qualified discovery privileges).

Second, the two-part *Cooper* test, which has been adopted and followed by most courts—including those which do *not* characterize the protections as a "privilege," *see, e.g., Bonanno,* 119 F.R.D. at 627—is characterized by virtually the same features as tests for other qualified privileges. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (qualified work product privilege); *Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 725–26 (5th Cir. 1980) (newsman's confidential source discoverable by plaintiff only where such information is relevant, undiscoverable by other means, and there is a "compelling interest"); *EEOC v. University of Notre Dame,* 715 F.2d at 339–39 (7th Cir.1983) (identity of

---

4. It is clear that tax returns are not *absolutely* privileged, *see St. Regis Paper Co.,* 368 U.S. at 218–19, 82 S.Ct. 289; *see also* 26 U.S.C. § 7216(b) (noting that a court may order disclosure of tax returns), and the parties do not suggest otherwise.

academic "peer reviewers" is discoverable only upon a showing of a "particularized need," which would include a showing that he has conducted a "thorough and exhaustive" search of alternative sources "prior to seeking those materials protected by the qualified privilege"). *See generally* William A. Edmunson, *Discovery of Federal Income Tax Returns and the New 'Qualified' Privileges,* 1984 Duke L.J. 938 (1984).[5]

In the court's view, there are sufficient grounds,[6] and support, for the recognition of a qualified privilege for tax returns. If anything, Congress's passage of the 1976 Act only removed any doubt as to the protected nature of these documents.[7] The court also believes that there is sufficient support for using the two-part *Cooper* test for determining the applicability of the qualified privilege in particular cases,[8] both in this court, *see, e.g., Yancey v. Hooten,* 180 F.R.D. 203, 215 (D.Conn.1998) (not citing *Cooper,* but applying a similar test) and others.

■ Plaintiff's and her husband's joint tax returns are therefore discoverable if: (1) it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder, and (2) there is a compelling need therefor because the information

contained therein is not otherwise readily obtainable. *See Cooper,* 34 F.R.D. at 484. *See also Bonanno,* 119 F.R.D. at 627; *SEC v. Cymaticolor Corp.,* 106 F.R.D. at 547. The court finds that, while the information contained within the returns may be relevant to the subject matter of the action and/or the issues raised thereunder,[9] there is not a compelling need because the relevant information is otherwise readily obtainable. Indeed, defendant already has such information in its possession.

Plaintiff has previously supplied defendant with her W–2 and 1099 forms and defendant has also subpoenaed plaintiff's employers for other earnings records. Moreover, defendant has merged with plaintiff's prior employer, so it presumably has access to plaintiff's prior employment records. Defendant, however, argues that plaintiff "could" avoid disclosure by "failing to produce all W–2 forms ... or by omitting one or more employers from her resume." [Def.'s Reply Mem. in Support of Cross–Motion to Compel ("Def.'s Reply") (doc. # 35), at p. 9.] Defendant also suggests that plaintiff may have had part-time employment that would not be reflected in either a W–2 form or her primary employer's records. [*See id.*] Defendant thus argues that "[o]nly production of

5. Although reaching a contrary conclusion—that tax returns should not be afforded a qualified privilege—this article contains an exhaustive review of, and a great amount of insight into, this area of the law.

6. Some courts have suggested grounds other than the common law that would justify a qualified privilege for returns. *See, e.g., DeMasi v. Weiss,* 669 F.2d 114, 119–20 (3d Cir.1982) (noting its willingness to entertain an argument that tax returns are protected by the constitutional right to privacy, grounded in notions behind the first, fourth, fifth, ninth, and fourteenth amendment to the U.S. Constitution, as well as in the fundamental concept of liberty) (citing, *inter alia,* Warren & Brandeis, *The Right to Privacy,* 4 Harv. L.Rev. 193 (1890); *Roe v. Wade,* 410 U.S. 113, 152–53, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)). Given the common law support, however, the court need not address the issue of constitutional sources at this time.

7. Courts have discussed the reasoning behind Congress's decision to explicitly recognize the confidentiality of tax returns. *See, e.g., Common-*

*wealth v. Burgess,* 426 Mass. 206, 226, 688 N.E.2d 439 (1997) (noting two reasons: first, to protect taxpayers' reasonable expectation of privacy; second, to ensure maximal compliance with Federal tax laws) (citations to cases and legislative history omitted).

8. Ironically, because the two-part *Cooper* test, which resembles tests for other qualified privileges, is used by courts that choose not to consider tax returns to warrant a qualified privilege, this court would likely reach the result even if it chose not to characterize the protection of tax returns as a "qualified privilege."

9. In fact, plaintiff "does not dispute that her income, particularly after her alleged termination, is at issue for purposes of establishing damages and mitigation efforts." [Pl.'s Reply Mem. in Opposition to Cross Mot. Compel ("Pl.'s Reply") (doc. # 32), at p. 15]. Plaintiff claims only that the second prong of the *Cooper* test is not satisfied. [*See id.*] Because plaintiff concedes satisfaction of the first prong, the court will address only the second prong.

[plaintiff's] tax returns would provide [defendant] with adequate assurances that the information it obtains with respect to this unquestionably relevant matter is complete and accurate." [*Id.*] [10]

The concerns of plaintiff and defendant are the essence of why the two-part inquiry is appropriate. The parties agree that information about the *plaintiff's income* is relevant, but plaintiff is wary about disclosing *all* the confidential information contained in a joint tax return,[11] especially given that defendant already has access to the relevant figures. The *Cooper* test is designed to prohibit unnecessary disclosure of confidential information, such as in this case, where defendant already has the answers that it seeks, and an *in camera* review is particularly appropriate when perhaps defendant is simply unable to confirm that it does have those answers.

The court has reviewed, *in camera*, plaintiff's tax returns for the years in question and compared them to the information already disclosed to defendant, i.e., plaintiff's W–2 forms. A review of plaintiff's tax returns for 1997, 1999, and 2000 confirms that plaintiff's wages, as reported therein, correspond exactly with the earnings shown on the W–2 forms for those years. Plaintiff's 1998 return corresponds directly with *two* W–2 forms: one from defendant, accounting for approximately 95% of plaintiff's total reported wages, and one from Leon M. Reimer & Co., P.C. ("Reimer"), accounting for the other five percent. Plaintiff notes that her 1998 Reimer income "does not reflect compensation earned in 1998 while Plaintiff worked for Defendant," but rather "the reconciliation of unpaid wages and benefits from employment that ended in 1996." [Letter from Attorney Dickinson to the court, dated June 27, 2001, at p. 2.] Plaintiff's 1996 tax return, which she has provided to the court even though it is

not covered in defendant's discovery request, confirms that she was employed with Reimer in 1996. Her 1997 return confirms that she was not employed with Reimer in 1997. Thus, the evidence supports plaintiff's argument.

■ Of course, plaintiff's tax returns include more information than plaintiff's W–2 forms, such as the amount of plaintiff's and her husband's taxable interest, dividend income, tax credits, real estate rental income, deductions and partnership and other income. However, defendant has not shown— nor even argued—that income other than plaintiff's wages and salaries is relevant to this action. Therefore, with respect to plaintiff's wages and salaries, the court finds that defendant is not entitled to plaintiff's tax returns because plaintiff has shown that such information is available to defendant from other sources, and therefore the second prong of the two-part *Cooper* test is not satisfied. Moreover, with respect to other types of income, the court finds that defendant is not entitled to plaintiff's tax returns because defendant has not shown that such information is relevant to this action, and therefore the first prong of the two-part *Cooper* test is not satisfied. Consequently, the motion to compel is denied.

### CONCLUSION

As discussed above, **defendant's Motion to Compel [Doc. # 25] is DENIED**. This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or

---

**10.** Defendant suggests that, to the extent plaintiff is concerned about the privacy of her husband's income, the court could enter an "attorneys' eyes only" order, or perhaps order that her husband's information be redacted. Given the court's alternative, *in camera* inspection and verification, the court need not consider the propriety of these suggestions.

**11.** Plaintiff's predominant concern seems to be the disclosure of her husband's earnings. Plain-

tiff's husband is a partner at defendant's competitor, Deloitte & Touche, and plaintiff believes that it is unnecessary and inappropriate to disclose his information to defendant, given that plaintiff's husband's income is irrelevant to this case. Plaintiff is also concerned about disclosing information regarding their investment income and personal deductions, which are also irrelevant to this case.

modified by the district judge upon motion timely made.