James L. HALPERIN and J.I. Corporation, formerly known as New England Rare Coin Galleries, Inc., Plaintiffs,

v.

Joseph J. BERLANDI, Joseph J. Berlandi, Inc., also known as Joseph J. Berlandi P.C., JJB, Inc., formerly known as Joseph H. Berlandi, Inc., Bruce M. Glinski, International Money Management, Inc., Alan B. Hershon, Lynwood P. Rumley, Steven J. Fallon, Jr., Fallon-Williams, Inc., Turner Construction Co., Inc., Mason M. Taber, Jr., as representative of a class of persons comprised of all the partners of Hemenway & Barnes, and John Does(s), individual(s) and/or entity(ies) whose identities are presently unknown to plaintiffs, Defendants.

Civ. A. No. 86–0703–MC.

United States District Court, D. Massachusetts.

Dec. 4, 1986.

R. Robert Popeo, John K. Markey, Peter A. Biagetti, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., for defendants, Joseph J. Berlandi and Joseph J. Berlandi, Inc.

Thomas E. Dwyer, Jr., Jody L. Newman, Dwyer & Murray, Boston, Mass., for defendants, Bruce M. Glinski, Intern. Money Management, Inc., and Alan B. Hershon.

Lynwood P. Rumley, Fitchburg, Mass., for the defendant, Lynwood P. Rumley.

Thomas J. Butters, Kathleen E. Coffey, Boston, Mass., for defendants, Steven J. Fallon, Jr. and Fallon-Williams, Inc.

Robert E. Fast, Anne E. Renner, Hale and Dorr, Boston, Mass., for defendant, Turner Construction Company, Inc.

William F. Looney, Jr., Richard J. Grahn, Boston, Mass., for defendant, Mason M. Tabor, Jr.

ORDER ON BERLANDI'S MOTION FOR ORDER COMPELLING APPEARANCE OF PLAINTIFF JAMES HALPERIN AT DEPOSITION (# 221), DEFENDANT HEMENWAY & BARNES' MOTION TO JOIN IN DEFENDANT BERLANDI'S MOTION FOR ORDER COMPELLING APPEARANCE OF PLAINTIFF JAMES HALPERIN AT DEPOSITION (# 224), PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY BERLANDI AND THE BERLANDI COMPANIES (# 197), DEFENDANT BERLANDI'S MOTION FOR A PROTECTIVE ORDER (# 222), AND PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY DEFENDANT INTERNATIONAL MONEY MANAGEMENT, INC. (# 196)

JOYCE LONDON ALEXANDER, United States Magistrate.

The instant discovery motions arise in a case emanating from alleged kick-back conspiracies carried out by many of the named defendants including Joseph Berlandi ("Berlandi"), perhaps with the assistance of unknown others, in connection with the

Christian M. Hoffman, Richard d'A. Belin, Foley, Hoag & Eliot, Boston, Mass., for plaintiffs, James L. Halperin and J.I. Corp.

purchase, financing and rehabilitation of plaintiffs' building located at 45 Milk Street in Boston, Massachusetts ("the Project"). In summary, the complaint alleges that plaintiffs James L. Halperin and J.I. Corporation ("Halperin") lost millions of dollars as a result of the unlawful and conspiratorial activities of their development consultant (Joseph Berlandi and his associate defendant Bruce Glinski) ("Glinski"), their legal counsel (defendant Hemenway & Barnes) and certain managerial insiders at NERCG (defendants Alan Hershon ("Hershon") and Lynwood Rumley ("Rumley")), among others, who allegedly caused the Project to fail because of their conduct. Plaintiffs raise claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), including 18 U.S.C. § 1962(c) and (d), breach of the Berlandi contract, breach of the Turner contract, breach of fiduciary trust by Berlandi and Hemenway & Barnes, breach of fiduciary trust by Hershon and Rumley, and conversion.[1]

The following motions are outstanding:

1. Berlandi's Motion for Order Compelling Appearance of Plaintiff James Halperin at Deposition (# 221);

2. Defendant Hemenway & Barnes' Motion to Join in Defendant Berlandi's Motion for Order Compelling Appearance of Plaintifff James Halperin at Deposition (# 224);

3. Plaintiffs' Motion to Compel Production of Documents by Berlandi and the Berlandi Companies (# 197);

4. Defendant Berlandi's Motion for a Protective Order (# 222); and

5. Plaintiffs' Motion to Compel Production of Documents by Defendant International Money Management, Inc. (# 196).

The Court will address these motions *seriatim.*

1. & 2. *Berlandi's & Hemenway & Barnes' Motion to Compel the Halperin Deposition*

A hearing was held on this motion on November 12, 1986.[2] The motion was denied, after the hearing, to the extent that it sought to compel the Halperin deposition to take place on Thursday, November 13, 1986 at 10:00 a.m. The Court did order, however, that said Halperin deposition is to take place between November 24, 1986 and December 5, 1986. Judge McNaught has established a cut-off date of December 31, 1986, for noticing all discovery. Counsel for Halperin asserted that Halperin's first available day to be deposed was after December 21, 1986. This Court finds that the defendants would be severely prejudiced in their ability to meet the cut-off date for noticing discovery established by the Court were Halperin not deposed until late in December.

 Additionally, this Court notes that the kinds of scheduling problems Halperin now faces both are part and parcel of any litigation and were exascerbated by his not notifying opposing counsel of any scheduling problems with the November 13, 1986 date until November 10, 1986—two business days before the noticed deposition date. The Supreme Court has noted how the Federal Rules of Civil Procedure serve to "invest the deposition-discovery process with a vital role in the preparation for trial", *Hickman v. Taylor*, 329 U.S. 495, 500, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947), but no such preparation can occur until the admittedly crucial witness or witnesses (in this case Halperin) are deposed.

Accordingly, this Court DENIED the motion but ordered Halperin deposed between November 24, 1986 and December 5, 1986.

3. *Plaintiffs' Motion to Compel Production of Documents by Berlandi and the Berlandi Companies*

Plaintiffs move, pursuant to Fed.R.Civ.P.

---

1. There have been criminal proceedings against defendants Hershon, Rumley, Berlandi, and Glinski relating to the Project.

2. This Court noted, on that date, that a written Order and Memorandum of Law would follow.

37(a)(2) [3], for an order requiring defendant Berlandi and the Berlandi companies (JJB, Inc. and Joseph J. Berlandi, Inc.) to produce for plaintiffs' inspection and copying the following documents responsive to plaintiffs' Requests for Production:

A. All tax returns, federal or state, filed by Berlandi or the Berlandi Companies since and including 1978;

B. Documents relating to any other defendant to this action, or to Peter Howlett or J. Marshall Friedman, but not to 45 Milk Street; and

C. Transcripts of grand jury testimony that defendant possesses relating to 45 Milk Street.

Defendants Joseph J. Berlandi and the Berlandi companies oppose the motion and move, pursuant to Fed.R.Civ.P. 26(c),[4] for a corresponding protective order on the grounds that the requested discovery is beyond the scope of Fed.R.Civ.P. 26(b),[5] and unsupportably intrusive and/or burdensome.

### A. *Berlandi tax returns*

Plaintiffs argue that the Berlandi and Berlandi Companies tax returns at issue are subject to discovery as long as they are relevant to the subject matter of the action. Plaintiffs further argue that the subject tax returns would be relevant to the issue of the full range of payments involved in defendants' wrongdoing.

Defendants respond that eight years of federal and state tax returns is too intrusive a request for a claim resulting from a few years of allegedly illegal payments and so seek a protective order. Plaintiffs respond that the tax returns at issue are relevant to the issue of "continuity plus relationship." Specifically, they argue that tax returns may evidence important income to Berlandi from payments from any of the other defendants or evidence significant expenses claimed by either Berlandi or Berlandi Companies. Additionally, they may go to the pattern element of a RICO claim.

■ The requirement of relevance, under the Federal Rules of Civil Procedure, is construed liberally, *Cox v. E.I. DuPont de Nemours & Co.*, 38 F.R.D. 396 (D.C.S.C. 1965). This Court finds the subject returns relevant under the broad interpretation of relevance suggested by the Federal Rules of Civil Procedure.

Defendants argue that the information can be readily had from other sources and that the government's pre-sentence report, from the criminal case, contains all the information plaintiffs need. Plaintiffs respond, however, that that report is not admissible as evidence. Defendants proffer no other alternative sources of the information sought.

■ Tax returns are subject to discovery as long as they are relevant to the subject matter of the action, *see Heathman v. United States District Court for the Central District of California*, 503 F.2d 1032 (9th Cir.1974); *Powell v. Merrimack Mutual Fire Insurance Company*, 80 F.R.D. 431, 433 (D.Ga.1978); *Weiner v. Bache Halsey Stuart, Inc.*, 76 F.R.D. 624, 627 (D.Fla.1977). Defendants give slight creedance to their argument that the same information is available elsewhere. The given tax returns are clearly relevant for the reasons outlined above. Accordingly, this Court hereby ALLOWS Plaintiff's Motion to Compel Production of Documents by

---

3. Fed.R.Civ.P. 37(a)(2) reads, in pertinent part: [I]f a party, in response to a request for inspection submitted under Rule 34, fails ... to permit inspection as requested, the discovering party may move for an order compelling ... inspection in accordance with the request.

4. Fed.R.Civ.P. 26(c) reads, in pertinent part: Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make an order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: 1) that the discovery not be had ...

5. Fed.R.Civ.P. 26(b) reads, in pertinent part: Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ...

**12**

Berlandi and the Berlandi Companies with regard to these tax returns and DENIES Berlandi's Motion for a Corresponding Protective Order.

### B. *Documents Not Relating to 45 Milk Street*

Defendant Berlandi opposes plaintiffs' request for documents relating to any other defendant to this action, or to Peter Howlett or J. Marshall Friedman, but not to 45 Milk Street on the grounds that it is overbroad and unnecessarily burdensome. Berlandi further argues that plaintiffs are entitled to only information regarding 45 Milk Street, the only project on which Berlandi was paid by plaintiffs. Defendant claims that documents pertaining to other projects are not relevant to the pending action. Accordingly, he seeks a protective order, pursuant to Fed.R.Civ.P. 26(c) for these documents.

Plaintiffs contend that the subject documents are directly relevant to plaintiffs' efforts to prove a pattern of racketeering under RICO. Plaintiffs argue that this discovery is necessary to establish relationships among various defendants and misdoings that go well beyond 45 Milk Street, particularly citing the Guild School and India Street projects and evidencing ongoing relationships between various of the defendants.

Defendant cites no cases to support his argument that the RICO claim's requirement of proof of a pattern of racketeering activity does not place in issue any of his projects besides 45 Milk Street. Plaintiffs rely on the requirement of such proof for a RICO claim and a general assertion that the broader the pattern proved, the stronger the case, to support the motion to compel.

In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court held that a violation of § 1962(c) requires conduct of an enterprise through a pattern of racketeering activity. "Pattern of racketeering activity" is defined, in section 1961(5), as requiring at least two acts of racketeering activity, one of which occurred after the effective date of the chapter and the last of which occurred within ten years after the commission of a prior act of racketeering activity. Footnote 14 in *Sedima* stated:

As many commentators have pointed out the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern "requires at least two acts of racketeering activity," § 1961(5), not that it "means" two such acts. The implication is that while two acts are necessary they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern". The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) ...

Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "Criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristsic and are not isolated events." 18 U.S.C. § 3575(e).

The Supreme Court has indicated, with *Sedima,* that a pattern requirement must be met before a RICO claim is to be allowed to go forward. Various courts have interpreted the pattern requirement in very different ways. Although the *Sedima* opinion did not reach the pattern requirement issue, the language cited above has produced a wealth of litigation testing the perimeters of the pattern requirement. *See* Steinhouse and Baker, "The Post-Sedima 'Pattern' Litigation—Perusing Acts, Episodes, Schemes, and Patterns", Vol. 2,

No. 22, Part 2, *Civil RICO Reporter* (November 5, 1986).

The standards on acts, episodes, schemes, and patterns is quite complicated, but it is unambiguously clear that a pattern is best proven by linking as many acts together over as long a period of time as possible. Indeed, the pattern requirement may require a showing of more than one scheme to meet the standard, *see Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir. 1986), or the pattern showing would at least be helped by a showing of different victims involved in multiple episodes of the fraud alleged, *see Papai v. Cremosnik*, 635 F.Supp. 1402 (N.D.Ill.1986). Though this Circuit has not articulated definitively its interpretation of the statute's pattern requirement in the post-*Sedima* era, plaintiffs are reasonable to seek to prove the broadest pattern possible both because the pattern requirement is uncertain and because there is some reason to believe that a pattern of racketeering activity will not be found where two or more predicate acts were committed in the furtherance of what could be characterized as one scheme. *see Exeter Towers Associates v. Bowditch*, 604 F.Supp. 1547, 1552 (D.Mass.1985).

█ The establishment of "continuity plus relationship" is a crucial element of a RICO claim. Indeed, one of the defendants has sought to dismiss the RICO claim against him on the grounds that plaintiff has failed to establish the pattern requirement. Given that the pattern requirement is a very real source of limitation on the kinds of cases that might properly be brought under RICO, *Exeter Towers*, 604 F.Supp. at 1553, and that there is no requirement that the pattern of racketeering activity be established by acts proximately related to the harm suffered by plaintiffs, the information sought is clearly relevant.

Accordingly, this Court hereby ALLOWS plaintiffs' Motion to Compel Production of Documents by Berlandi, and the Berlandi Companies with regard to documents not relating to 45 Milk Street and DENIES Berlandi's Motion for a Corresponding Protective Order.

### C. *Grand Jury Transcripts*

Plaintiffs also seek copies of the grand jury transcripts furnished to defendant Berlandi in connection with the criminal proceedings against him. Defendant Berlandi argues that plaintiffs have not made the proper showing to overcome the presumption of grand jury secrecy and so moves for a protective order on these documents, pursuant to Fed.R.Civ.P. 26(c). Alternatively, defendant argues that at least some portions of what is sought do not meet the test of demonstrating particularized and compelling need and so requests that the Court review *in camera* all portions of requested grand jury testimony prior to any disclosure.[6]

The standard that plaintiffs must satisfy in order to obtain access to Grand Jury transcripts under Fed.R.Crim.P. 6(e)(3)(c)(i)[7] is clear: "[they] must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. of California v. Petrol Strops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). "The tripartite test of *Douglas Oil* is a specific formulation of the elements that shape the interest-balancing implicit in any disclosure decision.... [T]he burden of demonstrating that the balance is in their favor is on the

---

6. This Court notes that plaintiffs have narrowed their request for grand jury transcripts to only those Berlandi possesses. This diminishes considerably the force of defendant's argument that this is a "blanket request." In light of this and in light of the fact that plaintiffs have already had access to these transcripts, *in camera* review by this Court is not necessary.

7. Fed.R.Crim.P. 6(e)(3)(c)(i) reads, in pertinent part:

> Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
> (i) when so directed by a court preliminarily to or in connection with a judicial proceeding.

parties seeking disclosure." *In re Screws Antitrust Litigation,* 91 F.R.D. 47 (D.Mass.1981).

Berlandi argues that plaintiffs have not shown that any of the witnesses whose grand jury testimony is sought have resisted discovery by their use of the fifth amendment and notes that the only two grand jury witnesses whose depositions plaintiffs have taken have testified fully in response to plaintiffs' questioning. Defendant cites *In re Screws,* 91 F.R.D. at 49 to support this argument, but it should be noted that *Screws* did not require or find sufficient a finding that the fifth amendment had been used to stymie discovery before the grand jury minutes could be discovered.

Defendant does not really contest the argument that the transcripts are useful and relevant but, instead, argues that the requesting party must show more than that. *Grumman Aerospace v. Titanium Metals Corp.,* 554 F.Supp. 771, 776 (E.D.N.Y.1982). Plaintiffs have indicated that they are aware that access to grand jury transcripts cannot be used solely to circumvent traditional discovery methods, *Grumman,* 554 F.Supp at 776, and contend that the information sought is not available by more traditional discovery methods.

■ Release of grand jury transcripts, in general, requires a balancing of the interest of grand jury secrecy against a litigant's interest in disclosure. *Screws,* 91 F.R.D. at 48. The grand jury investigating 45 Milk Street has finished its work. The transcripts have been provided to the defendants. Plaintiffs have already had some access to the transcripts—access provided by defendant. Plaintiffs' earlier access was sufficient to allow them to compile the impressive list of grand jury witnesses they have submitted in the papers supporting this motion. Those papers were filed in a court file to which the general public has access. There is little secrecy left as to those transcripts for the plaintiffs and none for the defendants.

■ Merely citing access by an opposing party does not demonstrate particularized need, *Grumman Aerospace v. Titanium Metals Corp.,* 554 F.Supp. 771, 776 (E.D.N.Y.1982) but the need for access does become more particularized and compelling when it becomes evident that the transcripts are essential both to assure the accuracy of testimony at trial and to equalize the access to relevant facts which each side possesses. *U.S. Industries v. United States District Court,* 345 F.2d 18, 23 (9th Cir., *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). The Court in *Petrol Stops Northwest v. Continental Oil Company,* 647 F.2d 1005 (9th Cir.1981) found that because grand jury transcripts had already been produced to defendants, because the proceedings had concluded, and because the transcripts were needed to be used to impeach, refresh recollection, and test credibility, the plaintiff there was to be allowed full access to the grand jury transcripts in question. Plaintiffs have shown a particularized need in the instant case for the grand jury transcripts at issue. Their need is analogous to that put forward by the plaintiff in *Petrol Stops* and equally compelling.

■ This Court notes that there remains an important interest in grand jury secrecy even once the grand jury has completed its operation. *Index Fund, Inc. v. Hagopian* 512 F.Supp. 1122 (S.D.N.Y.1981). In considering the effects of disclosure on grand jury proceedings, this Court must consider not only the immediate effects upon a particular grand jury, but also the possible effects upon the functioning of future grand juries. *Douglas Oil,* 411 U.S. at 222, 99 S.Ct. at 1674. This Court finds, however, that the weighty interest in grand jury secrecy in general is outweighed, in the case *sub judice,* by the need to avoid an injustice, by the circumstances of disclosure in the instant case, and by the limited nature of the request made by plaintiffs.

Accordingly, this Court hereby ALLOWS Plaintiffs' Motion to Compel Production of Documents by Berlandi and Berlandi Companies with regard to the grand jury tran-

scripts sought and DENIES Berlandi's motion for a corresponding protective order.

### 4. *Defendant Berlandi's Motion for a Protective Order*

A hearing was also held on this motion on November 12, 1986. Berlandi moved, pursuant to Fed.R.Civ.P. 26(c), that the Court order that the documents requested by plaintiffs in the schedule attached to their Notice of Deposition of John Begg not be produced and that the matters referenced by those requests not be inquired into at Mr. Begg's deposition.

Berlandi offered two grounds for the motion. The first was that the list included documents that Berlandi had already objected to (or that were analogous to documents previously objected to) and that the production of the listed documents was beyond the scope of the case. The second ground was that plaintiffs' counsel had obtained access to documents that Mr. Begg had produced pursuant to a federal grand jury subpoena from the prior criminal investigation of Berlandi's alleged tax fraud in a way that ran afoul of Fed.R.Crim.P. 6(e).

Berlandi's first ground has been discussed at section 3, *supra*. It is Berlandi's second ground for the Motion for a Protective Order, that is discussed here.

Defendant Berlandi argued that access by plaintiffs' counsel to materials previously produced to a grand jury was a violation of Fed.R.Crim.P. 6(e)'s secrecy concerns. Plaintiffs responded that Fed.R.Crim.P. 6(e) was not implicated because Mr. Begg voluntarily gave the documents to plaintiffs and because Assistant United States Attorney Daniel Small, though notified of the access, had raised no objections to the access.

 Berlandi's reliance on *In re Doe*, 537 F.Supp. 1038 (D.R.I.1982) to illustrate the fact that such access should be stopped was misplaced for a variety of reasons. *In re Doe* was a case concerning a United States Attorney's disclosure to a third party of documents acquired by a grand jury.

The instant facts are quite different. *In re Doe* also makes it quite clear that "the documents in question remain the property of the person who produced them", *In re Doe*, 537 F.Supp. at 1041, and that consent to disclosure from the owner of the documents was adequate authorization. Just as a witness is free to disclose his oral testimony before a grand jury, he is free to disclose what documentary evidence he has been compelled to provide to the grand jury. *In re Vescovo Special Grand Jury*, 473 F.Supp. 1335 (D.C.Cal.1979).

Accordingly, this Court DENIED defendant Berlandi's Motion for a Protective Order.

### 5. *Plaintiff's Motion to Compel Production of Documents by Defendant International Money Management, Inc.*

Plaintiffs seek an order directing defendant International Money Management ("IMM") to produce for plaintiffs' inspection and copying IMM's tax returns for the years 1984 and 1985. Plaintiffs claim that these tax returns are relevant to the issue of "continuity plus relationship". Defendant IMM, pursuant to Fed.R.Civ.P. 26(c), opposes the motion and moves for a protective order on the grounds that these documents are beyond the permissible scope of discovery as set forth in Fed.R.Civ.P. 26(b) in that they are not relevant to the subject matter of the action and are overly intrusive.

Defendant IMM concedes that tax returns are discoverable if they are relevant to the subject matter of the litigation but denies that the 1984 and 1985 tax returns are relevant and, alternatively, argues that plaintiffs have not demonstrated the necessary compelling need for them to be discoverable.

 Plaintiffs contend that IMM was created by defendants Glinski and Berlandi (through Hemenway and Barnes) for the purpose of serving as a conduit for the alleged illegal payments connected with the Milk Street project as well as "suspicious" payments from Glinski to Berlandi in other

contexts. Evidence going beyond the Milk Street project would be relevant to their effort to establish a "pattern" of racketeering under RICO and these documents are reasonably calculated to lead to such evidence. For all the reasons discussed previously in this opinion, at section 3, *supra*, regarding another defendant's tax returns, this Court hereby ALLOWS Plaintiffs' Motion to Compel Production of Documents by Defendant International Money Management, Inc. Accordingly, Defendant IMM's Motion for a Protective Order is DENIED.

SO ORDERED.