Gerald L. TERWILLIGER, Plaintiff,

v.

YORK INTERNATIONAL CORPORATION, d/b/a Bristol Compressors, Inc., Defendant.

Civ. A. No. 92–00131.

United States District Court, W.D. Virginia, Abingdon Division.

Sept. 12, 1997.

Paul G. Klockenbrink, S.D. Roberts Moore, Roanoke, VA, James William Elliott, Jr., Steven R. Minor, Bristol, VA, for Plaintiff.

Henry Chao-lon Su, Thomas G. Slater, Jr., Richmond, VA, Wade W. Massie, Abingdon, VA, for Defendants.

GLEN M. WILLIAMS, Senior District Judge.

### MEMORANDUM OPINION

#### I. *Introduction.*

Pending is the plaintiff's motion to quash pursuant to FED.R.CIV.P. 26(c) and 45 and his motion for a protective order. The court exercises jurisdiction over this diversity action in accordance with 28 U.S.C. § 1332.

#### II. *Background.*

On September 4, 1992, Gerald L. Terwilliger filed suit against York International Corporation and its subsidiary, Bristol Compressors, Inc. (jointly referred to herein as "York"). Terwilliger alleges that he entered into an oral contract with the Chief Operating Officer of Bristol Compressors, Michael Young. Terwilliger alleges that Young promised to pay him, above and beyond his annual salary, if he invented a new reciprocating compressor. The amount of remuneration was to be based upon the commercial success of the product. Although it was not part of his general duties, Terwilliger subsequently designed a compressor that was an enormous financial success for York. This breach of contract litigation stems from Terwilliger's contention that he was not properly compensated for his efforts. Specifically, Terwilliger claims that York breached its express or implied promises to pay him for his services in designing the compressor and to compensate him for the assignment of his patent rights, to the extent such rights were assigned.

A jury trial has been scheduled in January 1998 to resolve plaintiff's claims. In the course of pretrial discovery, the pending dispute developed. York has made several attempts to discover information regarding Terwilliger's income, his overall financial situation, and his understanding about the contract with York as revealed through his financial statements. On June 9, 1997, York served subpoenas on an accountant and three

financial institutions that Terwilliger identified in his deposition as having used.[1] The subpoena to the accountant requested production of the plaintiff's federal and state tax returns from 1985 to the present. The subpoenas to the banks sought any financial statements or loan applications that reflected plaintiff's assets from 1988 to the present.

Terwilliger has objected on the ground that the subpoenas are not reasonably calculated to lead to the discovery of admissible evidence. He has moved for an order that either quashes the subpoenas or limits discovery information to his wage income. The issue has been briefed and the parties presented arguments to the court at a recent hearing. The matter is now ripe for resolution. The court will address each of defendant's discovery requests and the plaintiff's corresponding objections in turn.

### III. *Law and Discussion.*

#### *(1) Discovery of plaintiff's income tax returns*

York argues that Terwilliger's income is an issue central to this litigation. York contends that plaintiff's salary history is a factual issue that is relevant to his claim for damages. The reasonable value of Terwilliger's services and the amount of compensation he received for those services is best evidenced by his wages. Therefore, York maintains that disclosure of plaintiff's tax returns is proper.

In response, Terwilliger acknowledges the relevance of his earned income. He argues, however, that his wages are the only discoverable information contained in his tax returns. Terwilliger alleges that York possesses that information from three distinct sources. First, Terwilliger asserts that he testified on the subject during his deposition in July 1996. Second, he responded to York's third production request by providing information regarding his income level to the best of his recollection. Third, plaintiff argues that much of Terwilliger's salary history is accessible to York through employment

records while he was employed at York's subsidiaries.

York has requested the tax returns to verify the amount and sources of income that Terwilliger earned. York notes that Terwilliger was unable to recall this information specifically during his deposition. As a result, Terwilliger's tax returns will serve as the most accurate and complete source of that information. York has also submitted an affidavit from its damage expert, David S. Evans, who contends that the tax returns would be useful in rebutting the conclusions of Terwilliger's damage experts.

■ Courts have made it increasingly clear that tax returns in the hands of a taxpayer are not privileged from civil discovery. *See St. Regis Paper Co. v. United States,* 368 U.S. 208, 218–19, 82 S.Ct. 289, 295–96, 7 L.Ed.2d 240 (1961) (dictum); *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 74 (7th Cir.1992); *Credit Life Ins. Co. v. Uniworld Ins. Co.,* 94 F.R.D. 113, 119 (S.D.Ohio 1982). Nevertheless, judicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns. *See Natural Gas Pipeline Co. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1411 (5th Cir.1993), *cert. denied,* 510 U.S. 1073, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994); *Tele-Radio Sys. Ltd. v. DeForest Electronics, Inc.,* 92 F.R.D. 371, 375 (D.N.J.1981). Unnecessary disclosure of tax returns is to be avoided. *Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir. 1975).

■ Examination of case law reveals the emergence of a judicially developed "qualified privilege ... that disfavors the disclosure of income tax returns as a matter of general federal policy." *Eastern Auto Distribs., Inc. v. Peugeot Motors of Am., Inc.,* 96 F.R.D. 147, 148–49 (E.D.Va.1982) (citations omitted). See William A. Edmundson, Note, *Discovery of Federal Income Tax Returns and the New "Qualified" Privileges,* 5 DUKE L.J. 938 (1984) (tracing the development of this quasi-privilege). A two-prong test has

---

1. Served with subpoenas were the following: Kenneth D. Keith, CPA, of Blountville, Tennessee; First American National Bank of Nashville, Tennessee; NationsBank of Dallas, Texas; and Tyler Bank & Trust N.A. of Tyler, Texas.

been utilized to assess whether the qualified privilege should be overcome and a party's income tax returns should be disclosed. The court must determine whether (1) the tax return is relevant to the subject matter in dispute; and (2) a compelling need exists for the return, because the information sought is not obtainable from other sources. *Eastern Auto Distribs., Inc.,* 96 F.R.D. at 148; *Hawkins v. South Plains Int'l Trucks, Inc.,* 139 F.R.D. 679, 681–82 (D.Colo.1991); *United States v. Bonanno Organized Crime Family,* 119 F.R.D. 625, 627 (E.D.N.Y.1988); *S.E.C. v. Cymaticolor Corp.,* 106 F.R.D. 545, 547 (S.D.N.Y.1985). While the party seeking discovery of the tax returns bears the burden of establishing its relevance, the resisting party has the task to identify an alternative source for the information. *Eastern Auto Distribs., Inc.,* 96 F.R.D. at 149 (citing *Biliske v. American Live Stock Ins. Co.,* 73 F.R.D. 124 (W.D.Okla.1977)); *Kelling v. Bridgestone/Firestone, Inc.,* 157 F.R.D. 496, 497 (D.Kan.1994).

In contrast, a minority of courts have held that the sole inquiry governing discovery of tax returns is whether the information contained in the return is relevant. *See, e.g., In re Cummins,* 144 B.R. 426, 427 (Bankr. W.D.Ark.1992) (citing *Halperin v. Berlandi,* 114 F.R.D. 8, 11 (D.Mass.1986)); *Shearson Lehman Hutton, Inc. v. Lambros,* 135 F.R.D. 195, 198 (M.D.Fl.1990). This court, however, favors the two-prong approach articulated by the Eastern District of Virginia in *Eastern Auto Distribs., Inc.,* 96 F.R.D. at 148. We believe that test artfully balances the privacy interest inherent in tax returns with the policy favoring broad civil discovery. Proper consideration is also afforded to the relevancy and materiality of the information.

Similarly, this court embraces the allocation of burdens contained in that model. At least one court has opted to place the responsibility of establishing a lack of an alternative source on the party propounding the discovery. *See, Eglin Fed. Credit Union v. Cantor, Fitzgerald Sec. Corp.,* 91 F.R.D. 414, 416–17 (N.D.Ga.1981) In our estimation, however, that burden properly lies on the party resisting discovery. This approach is consistent with the discovery provisions of the Federal Rules that favor broad pretrial discovery. Accordingly, we will apply the test to the instant facts.[2]

As in any discovery dispute, the threshold issue of relevance hinges on whether the requested information pertains to the subject matter in dispute or is reasonably calculated to lead to the discovery of admissible evidence. *See* FED.R.CIV.P. 26(b)(1). Relevance for discovery purposes is distinguishable from that which is relevant evidence at trial. *Compare* FED.R.CIV.P. 26(b)(1), *with* FED.R.EVID. 401. The Federal Rules of Civil Procedure have been interpreted to allow maximum discovery. *See* FED.R.CIV.P. 26–37.

The court agrees that the plaintiff's wages are relevant for discovery purposes. *See Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 64 (4th Cir.1993) (noting that "district courts have broad discretion in their resolution of discovery problems.") However, information such as Terwilliger's investment income or his wife's income is not relevant to this suit even under the liberal rules of discovery. Thus, our concern is solely with the discovery of plaintiff's wages.

The court further finds that Terwilliger has met his burden of establishing that the requested information is available from sources other than his tax returns. Courts have encouraged the party propounding discovery to obtain information from other financial documents of his adversary. *See Eastern Auto Distribs., Inc.,* 96 F.R.D. at 149, n. 1 (opponents annual reports, commercial newspapers, regulatory agency files); *Tele–Radio Sys. Ltd.,* 92 F.R.D. at 374, n. 1 (corporate minute book, stock book, stock transfer ledger, shipping documents, warranty documents, payment records, sales ledgers). In this case, it is not even necessary for York to examine Terwilliger's records. Rather, it is York itself that has access to the vast majority of the information it seeks to discover.

---

**2.** The approach adopted by this court is also the standard that York and Terwilliger have urged us to apply. *See* Def.'s Opp'n to Mot. to Quash & Protective Order at 13–15; Pl.'s Mot. to Quash & Protective Order at ¶¶ 3–5.

Defendant is attempting to obtain Terwilliger's salary history while he was employed at Bristol Compressors and Evcon Industries. Bristol Compressors and Evcon are both subsidiaries of Defendant York. Considering York's size and sophistication, it certainly can be assumed that the corporation maintains employment records. This is especially true considering how recently Terwilliger was employed by the corporation. Therefore, York should possess the information they hope to discover by reviewing the plaintiff's tax returns.

■ Similar reasoning applies to Terwilliger's income from American Pride, Inc. Plaintiff was a co-owner of the now-defunct American Pride car wash with Young. The court finds no reason why York cannot obtain information from Young regarding what Terwilliger was paid by American Pride. The court is aware of the long-standing business relationship and personal friendship that exists between the plaintiff and Young. Therefore, if a good faith inquiry fails to produce such information, York may return to this court to compel production at that time.

■ Obtaining Terwilliger's salary history at Alliance Compressors, his current employer, is slightly more complicated. Unlike Terwilliger's other employers, salary information from Alliance is not readily available to York. The court recognizes that income tax returns are generally regarded as the most accurate and complete sources of one's income. However, the interests of justice do not require production of tax returns when other discovery methods are available to convey the same information. In this case, plaintiff's salary during his limited tenure at Alliance Compressors is available to York through less intrusive means than plaintiff's tax returns.

■ Terwilliger's counsel agreed during oral arguments to provide York with his W–2 forms from Alliance Compressors.[3] We believe that W–2 forms will serve as an acceptable source of information. This approach eliminates the need to delve into plaintiff's tax returns and any accompanying personal information that is patently irrelevant to this case.[4]

York contends that the W–2 forms are insufficient. York suggests that only the plaintiff's tax returns will reveal the true extent of his earned income. York is particularly concerned with determining whether Terwilliger earned additional income through endeavors with Young that may not be disclosed on a W–2 form.

■ Terwilliger's position on this issue has been consistent. He has testified that to the best of his recollection, he did not earn additional income as a result of any ventures with Mike Young. Nevertheless, York wants to review the tax returns to verify the accuracy of plaintiff's statements. If plaintiff did in fact earn additional income, York wants to evaluate the manner in which he was compensated and impugn Terwilliger's credibility.

This court finds no reason for a wholesale inquiry as York proposes. Terwilliger has already testified on this point. His attorneys then represented to the court that ventures with Young did not yield the plaintiff any financial gain. Terwilliger listed the wages he received from American Pride in a supplemental response to York's third request for production of documents dated July 18, 1996. If York suspects that Terwilliger may have earned additional income with Young, it should consult with its corporate officer on that matter. If York learns that Terwilliger earned additional income by virtue of his endeavors with Young, York should inform the court and we will address the issue appropriately. However, in light of plaintiff's testimony and our *in camera* review of plaintiff's draft and filed tax returns, we do not find that York's request is "reasonably calculated to lead to the discovery of admissible evidence" as required by Fed.R.Civ.P. 26(b)(1).

---

3. In his brief, Terwilliger also suggested that his wage history at Alliance Compressors may be obtained via redacted tax returns. Pl.'s Mot. to Quash and Mot. for Protective Order, ¶ 5.

4. The salary information that Terwilliger is being ordered to produce is within the purview of the amended protective order entered by this court on June 7, 1996.

### (2) Discovery of financial documents and loan applications

 York is also attempting to obtain any loan applications or financial statements from 1988 to the present that describe Terwilliger's financial status. York wants to determine if Terwilliger listed his pending claim as an asset on any financial documents. Plaintiff testified at his July 1996 deposition that the only loan he has applied for during that time period was a mortgage with Tyler Bank and Trust N.A. in Tyler, Texas. Terwilliger has consistently maintained that he possesses no financial statements.[5]

York intends to argue that Terwilliger's failure to list the claim on his financial statements is relevant. York contends that it illustrates Terwilliger's understanding of the claim. York asserts plaintiff's failure to include an alleged breach of contract claim for $51 million is probative of the nature, certainty, and amount of the alleged promise.[6] York is seeking to inspect the mortgage application to confirm plaintiff's financial position.

York claims that production of the mortgage documents is especially relevant in light of Terwilliger's inconsistent responses during discovery. York cites the following chronology in support of its position. Initially, Terwilliger responded to York's production request by stating that he did not possess any financial documents listing his assets from 1988 through the present. He subsequently testified at his deposition that he completed a mortgage loan application approximately six months before the date of the deposition. According to his testimony, Terwilliger did not retain a copy of the application for his personal files. Plaintiff did not believe that he listed his claim against York as an asset. Terwilliger then answered York's third set of interrogatories by stating that he "has not described or listed as an asset any of the claims in this lawsuit or interest in the inertia compressor on any financial statements which he has submitted."

In opposition, Terwilliger has objected to York's request and has steadfastly resisted producing the loan application. First, Terwilliger claims that no logical or legal reason exists why a potential right to recover would have been listed as an asset on a loan application. Second, his answers to interrogatories clearly indicate that he did not describe or list his claims in this lawsuit as an asset on any financial statements or loan applications. Thus, to the extent that fact is relevant, York already has the information it desires.

The court agrees with Terwilliger. We note at the outset that questions exist regarding the relevance of the information York seeks. The court has been presented with no reason why plaintiff would list an amount claimed in ongoing litigation as an asset on a mortgage application. Nor are we convinced that a lending institution would even consider such information when determining whether to extend credit.

If York desires to impeach plaintiff on this issue, it can simply use his deposition testimony or answers to interrogatories. Plaintiff's position is that he has not listed his claim against York as an asset. Obtaining the actual documentation will not assist York's position. No other information contained in the mortgage application is discoverable. Therefore, no reason exists to permit York to explore the financial position of the plaintiff and his wife to confirm sworn answers.

### V. Conclusion.

For the aforementioned reasons, the court grants plaintiff's motion to quash the subpoenas seeking production of his tax returns. While Terwilliger's wages are relevant, alternative sources for that information exist. Plaintiff must, however, produce his W–2

---

5. These facts appears to have been borne out. Both First American National Bank and Nations-Bank have been unable to locate any records responsive to the subpoena. Tyler Bank and Trust has produced one mortgage application and income certification for the plaintiff and his wife. These documents are currently under seal with this court.

6. The amount of damages is derived from one of the plaintiff's damage experts, Samuel R. Gray. In his complaint, plaintiff listed his claim at $100,000,000.00.

forms relating to his employment at Alliance Compressors. Furthermore, plaintiff's motion is granted to the extent that he is not required to produce his mortgage application. York's assertion that his failure to list this claim is relevant is not entirely persuasive. Nevertheless, plaintiff has already stated that he did not list the claim as an asset.

The court will issue an appropriate order.

### ORDER

For the reasons set forth in the Memorandum Opinion entered this day, it is hereby **ORDERED** and **ADJUDGED** that the plaintiff's motion to quash is **GRANTED**. Consequently, the plaintiff is not required to produce his draft or filed income tax returns or a copy of his mortgage application. However, the plaintiff shall produce copies of his W–2 forms relating to his work at Alliance Compressors.