UNITED STATES of America, Plaintiff,

v.

**CERTAIN REAL PROPERTY KNOWN AS AND LOCATED AT 6469 POLO POINTE WAY, DELRAY BEACH, FLORIDA, With Improvements, Fixtures, Furnishings, and Equipment Thereon and Therein, and All Rents and Profits Derived Therefrom, et al Defendant.**

No. 04–81135CIV.

United States District Court, S.D. Florida.

April 5, 2006.

Mark W. Lester, AUSA, counsel for Plaintiff.

Marc Kesten, Esq., Counsel for Claimant.

## OMNIBUS ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF TAX RECORDS (DE 30) AND DENYING CLAIMANT'S REQUEST FOR HEARING (DE 33)

HOPKINS, United States Magistrate Judge.

**THIS CAUSE** has come before this Court upon an Order Referring all discovery matters to the undersigned United States Magistrate Judge for final disposition. (DE 10).

This Court has before it Plaintiff's Motion to Compel Production of Tax Records, and Claimant's Opposition to the motion. (DEs 30, 34). Claimant has also requested a hearing on this matter, to which the Government has not replied. (DE 33). The matter is now ripe for review. For the reasons that follow, this Court

GRANTS Plaintiff's Motion to Compel, and **DENIES** Claimant's Request for Hearing. (DEs 30, 33).

## BACKGROUND

The instant case is an action by the United States Government ("the Government") for the forfeiture of real property based upon a stock fraud alleged to have been committed by the owner of the property, Mr. Steven Zeldin ("Zeldin"). (DE 1). The Government has already obtained a default judgment against a Mercedes Benz owned by Zeldin. (DEs 26, 27). Jurisdiction is based on federal statutes, 18 U.S.C. §§ 981, 1341, 1343, 1957; and, 28 U.S.C. §§ 1345, 1355, and 2461. (DE 1).

On December 23, 2005, the Government sent to Raymond Zorabedian ("Claimant") a subpoena, Notice of Deposition, and First Request for Production. (DE 30, pg. 1, exh. 1). In such request, the Government sought the production of claimant's Federal, state, and local tax returns for the last six (6) years. (DE 30, pg. 1). By correspondence dated January 5, 2005, Claimant objected to the request, and provided nothing. (DE 30, pgs. 1–2, exh. 2).

On January 24, 2006, the Government deposed claimant. (DE 30, exh. 3). At the deposition, Claimant again refused to provide the documents, and renewed his objection. (DE 30, exh. 3, pg. 5).

Claimant testified about his twenty-eight years of experience and work history as an interior designer for Zeldin as well as other individuals. (DE 30, exh. 3, pgs. 8, 10, 11, 13, 16, 18–23, 27–38, 65–83, 111–119). However, when questioned as to his income, although Claimant testified that he was paid for some of his design jobs, Claimant also testified that he received no income for many jobs, including the pro-

ject with Zeldin, because either his company was paid instead of him, or he was "stiffed." (DE 30, exh. 3, pgs. 13, 14, 16, 18, 19, 20, 21, 23, 24, 27–29, 32–34, 38, 90, 98, 102, 136, 138–142, 155). As to his involvement with Zeldin, Claimant repeatedly testified that he is only owed money by Zeldin as a result of an oral agreement for interior designing services, that he had no involvement with Zeldin's alleged fraudulent stock sales, and that although Zeldin had offered to pay Claimant a commission for referring people to Zeldin for purchases of stock, no commissions were ever paid. (DE 30, exh. 3, pgs. 44–47, 50–53, 54–59, 60–64, 67–75, 131–142).

Finally, while Claimant testified that he was acquainted with an individual named Linda Schub ("Schub"), and that they were friends, he never revealed that he had any design contracts with her, or that he received any income from her. (DE 30, exh. 3, pgs. 43, 44, 45–59, 96). Although Claimant was directly questioned about every project that he worked on since becoming a professional designer, Claimant failed to include his projects done for Schub, and the fact that he was paid for his services. (DE 30, exh. 3, pgs. 8, 10–14, 16, 18–24, 27–38, 43, 44, 45–59, 65–83, 90, 96, 98, 102, 111–119, 136, 138–142, 155).

On February 15, 2006, the Government deposed Schub. During her deposition, Schub testified that she hired claimant as an interior designer on several occasions over a period of a few years, and that she paid him between sixty and sixty-five thousand dollars ($60,000.00 to $65,000.00) for his designing services. (DE 30, exh. 4, pgs. 5–9, 34, 36–37).

## CLAIMANT'S REQUEST FOR HEARING

In support of its Request for Hearing, Claimant states that he is afraid that the

Government will make inaccurate statements in any reply filed in support of the Motion to Compel. (DE 34, pg. 1). Noting that the Government has not filed a Reply in support of its motion, this Court finds that a hearing is unnecessary. Accordingly, Claimant's Request for Hearing is **DENIED.** (DE 33).

### TIMELINESS

In his response to Plaintiff's Motion to Compel, Claimant first argues that the instant Motion in untimely because it was not filed within the time limits contained within S.D. Fla. L.R. 26.1.H.1. (DE 34, pgs. 1, 3–4).

The rule states,

1. *Time for filing.* All motions related to discovery, including but not limited to motions to compel discovery and motions for protective order, shall be filed within thirty (30) days of the occurrence of the grounds of the motion. Failure to file discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute waiver of the relief sought.

S.D. Fla. L.R. (April 2005).

The above quoted section does not define what constitutes the "occurrence of the grounds of the motion." In the instant case, if this Court construed the date that claimant first objected to the Request for Production, January 5, 2006, as the occurrence of the grounds of the motion, or the date that such objection was reaffirmed at claimant's deposition, January 24, 2006, (DE 30, exhs. 2, 3), as the occurrence of the grounds of the motion, then it would appear that the instant Motion to Compel would be untimely because the instant motion was filed on March 14, 2006, well over thirty (30) days after such objections.

However, in her deposition, which occurred on February 15, 2006, (DE 30, exh. 4), Schub testified that she paid Claimant approximately sixty-five thousand dollars for designing services he rendered to her over a period of a few years, directly in contradiction to Claimant's testimony. Because the instant Motion to Compel was filed on March 14, 2006, within thirty (30) days of Schub's deposition, this Court concludes that the instant motion is timely filed within S.D. Fla. L.R. 26.1.H.1 (April 2005).

### MERITS

The Government asserts that the tax records are relevant to Claimant's claim that he is an innocent owner of the money owed to him under his contract with Zeldin. (DE 30, pg. 4). The Government contends that because the contract between Claimant and Zeldin was an oral agreement, and because Zeldin is currently a fugitive, the only evidence of such oral agreement is the testimony of Claimant. (DE 30, pg. 4). According to the Government, because Claimant failed to testify about the projects he performed for Schub when he was directly questioned about all of his designing projects since becoming a professional designer, and because Schub testified that she paid Claimant approximately sixty-five thousand dollars for designing services rendered by Claimant, Claimant's credibility has become a key issue. (DE 30, pg. 4). Finally, the Government contends that pursuant to *Maddow v. Procter & Gamble Co., Inc.,* 107 F.3d 846, 853 (11th Cir.1997), the Government need only show that the tax records are relevant, not that they are relevant and that the Government also has a compelling need for the records. (DE 30, pg. 4).

In response, relying upon Florida law, Claimant contends that the tax records sought by the Government are not relevant to claimant's cause of action against Zeldin for breach of contract or for foreclosure of a mechanic's lien. (DE 34, pgs. 4–8). Claimant also states that the Government was required to have a good faith basis for even seeking the production of such documents. (DE 34, pg. 5–6).

Initially, this Court notes that the instant case is not in the District Court for any breach of contract of action that Claimant may have against Zeldin. Rather, the instant case is an action by the Government for forfeiture of real property presently owned by Zeldin, and is predicated upon federal question jurisdiction. (DE 1).

As to the scope of discovery, the Federal Rules of Civil Procedure provide,

> ... Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

Fed.R.Civ.P. 26(b)(1).

In construing the permissible limits of discovery, the United States Supreme Court has stated,

> The key phrase in this definition-"relevant to the subject matter involved in the pending action"-has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *See Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947).

Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. *Id.*, at 500–501, 67 S.Ct. at 388. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

\* . \* \* \* \* \*

At the same time, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Id.*, at 507, 67 S.Ct. at 392. Discovery of matter not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of Rule 26(b)(1). Thus, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case.

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351–352, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) *(footnotes omitted )*.

■ The burden of showing that the requested discovery is not relevant to the issues in the case rests on the party resisting discovery. *See Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01–0392–CIV, 2001 WL 34079319, \*2 (S.D.Fla. Nov.1, 2001) *(citation omitted )*.

■ Courts are split as to whether tax returns are entitled to enhanced protection from discovery. Most courts, including some within the Southern District of Florida, hold that a party seeking disclosure of tax returns must show some compelling need in addition to relevance because tax

returns are either privileged or public policy restricts their disclosure. *See Dunkin' Donuts, Inc.,* 2001 WL 34079319, *2 ("Although tax returns are not privileged, there is a public policy against their disclosure unless (1) it clearly appears that they are relevant to the subject matter of the action, and (2) a compelling need is shown because the information contained therein is not otherwise available.") (*citation omitted*); *Pendlebury v. Starbucks Coffee Co.,* No. 04–80521–Civ, 2005 WL 2105024, *1– *2 (S.D.Fla. Aug.29, 2005) ("a party seeking the production of tax returns must demonstrate (1) the relevance of the tax returns to the subject matter of the dispute and (2) a compelling need for the tax returns exists because the information contained therein is not otherwise readily obtainable.") (*citing Dunkin' Donuts, Inc.,* 2001 WL 34079319 at *2; *Terwilliger v. York Int'l Corp.,* 176 F.R.D. 214, 217 (W.D.Va.1997); *SEC v. Cymaticolor Corp.,* 106 F.R.D. 545, 547 (S.D.N.Y.1985)); *Aliotti v. Vessel SENORA,* 217 F.R.D. 496, 497–98 (N.D.Cal.2003) (same); *Gattegno v. Pricewaterhousecoopers, LLP,* 205 F.R.D. 70, 71–73 (D.Conn.2001) (same); *Terwilliger v. York Int'l Corp.,* 176 F.R.D. 214, 216–17 (W.D.Va.1997) (same); *E. Auto Distribs., Inc. v. Peugeot Motors of America, Inc.,* 96 F.R.D. 147, 148–49 (E.D.Va. 1982) (same); *United States v. Bonanno Organized Crime Family of La Cosa Nostra,* 119 F.R.D. 625, 627 (E.D.N.Y.1988) (same).

However, other courts, including some within the Southern District of Florida, require only a showing of ordinary relevance. *See Shearson Lehman Hutton v. Lambros,* 135 F.R.D. 195, 198 (M.D.Fla. 1990) (ordering disclosure of tax returns because such information was relevant to the parties claims and defenses, reasoning that the quasi-privilege for tax returns had

not been expressly recognized within the Circuit); *Weiner v. Bache Halsey Stuart, Inc.,* 76 F.R.D. 624, 627 (S.D.Fla.1977) (holding that no privilege attaches to tax returns and that their discoverability turns on relevance); *MCI Worldcom Network Servs., Inc. v. Von Behren Elec., Inc.,* No. 1:00CV3311JTC, 2002 WL 32166535, at *4 (N.D.Ga. May 21, 2002) (same) (*citing Shearson Lehman Hutton, Inc.,* 135 F.R.D. at 198); *Halperin v. Berlandi,* 114 F.R.D. 8, 11 (D.Mass.1986) (same) (*citing Heathman v. United States District Court for the Central District of California,* 503 F.2d 1032 (9th Cir.1974); *Powell v. Merrimack Mut. Fire Ins. Co.,* 80 F.R.D. 431, 433 (D.Ga.1978); *Weiner,* 76 F.R.D. at 627).

Despite the fact that some Courts within the Southern District of Florida have required a compelling need prior to ordering disclosure of tax records, the Eleventh Circuit declined to adopt such a position. In *Maddow,* 107 F.3d at 853, the defendants requested plaintiffs' tax returns and sent an interrogatory seeking detailed attorney fee arrangement information. Although the plaintiffs objected to the tax return request on privilege and relevance grounds, they provided W–2 and 1099 forms to document their earnings. The district court found that the tax records would contain relevant information not contained within the supplied forms, and ordered the plaintiffs to pay three thousand dollars ($3,000.00) in attorney's fees for not complying with the discovery request. *See Id.*

On appeal, in affirming the district court's order compelling production of the tax records, the Court stated, "[t]he court's decision to compel discovery was not an abuse of discretion: both items of information are arguably relevant to the

case." *Id.* However, the Court reversed the district court's imposition of sanctions, finding that the plaintiffs were substantially justified in relying on out-of-circuit district court caselaw in support of their contention that a compelling need had to be shown prior to ordering disclosure, where there was no in-circuit caselaw regarding the disclosure of tax records. *See Id.* It should be noted that while the Court recognized that cases requiring a compelling need to be shown prior to ordering disclosure of tax records, the Eleventh Circuit did not adopt such approach. *See Id.*

Finally, this Court notes that some courts have held that equitable considerations may require the disclosure of tax returns where a party has placed his income at issue. *See Bonanno Organized Crime Family of La Cosa Nostra,* 119 F.R.D. at 627, n. 2 (stating that although the Second Circuit does not require a party to place his income at issue for his tax returns to become discoverable, other courts have so held) (*citing Smith v. Bader,* 83 F.R.D. 437–439 (S.D.N.Y.1979); *Beaty v. Basic Res. Int'l S.A.,* No. 81–6189, 1985 WL 1074 (S.D.N.Y. Apr.29, 1985); *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Res. Auth.,* 79 F.R.D. 72, 81 (D.P.R. 1978); *Shaver v. Yacht Outward Bound,* 71 F.R.D. 561, 563–64 (N.D.Ill.1976)); *Cymaticolor Corp.,* 106 F.R.D. at 548, n. 2 (observing that where the party seeking

disclosure has been unable to establish relevancy and that the documents were not available elsewhere, some courts have ordered disclosure where the party resisting discovery has placed his income at issue) (*citing above cases, and, Biliske v. American Live Stock Ins. Co.,* 73 F.R.D. 124, 126, n. 1 (W.D.Okla.1977); *Maldonado v. St. Croix Discount, Inc.,* 77 F.R.D. 501, 503 (D.Vi.1978); *Fed. Sav. & Loan Ins. Corp. v. Krueger,* 55 F.R.D. 512, 514 (N.D.Ill.1972)).

Application of the foregoing leads this Court to conclude that the Government's Motion to Compel should be **GRANTED**. Such conclusion is based on several factors. First, while this Court recognizes the large amount of caselaw requiring that a compelling need be shown prior to ordering disclosure of tax returns, this Court also notes that in *Maddow,* the Eleventh Circuit was squarely presented with such issue and declined to adopt the higher standard.

■ Second, because the Eleventh Circuit has only required a showing of relevance, this Court finds that the records are relevant to Claimant's claim of lack of involvement with Zeldin's alleged fraudulent activities.[1] *See* Fed. R.Civ. P. 26(b)(1). In his deposition, Claimant repeatedly testified that he is only owed money by Zeldin as a result of an oral

---

1. Even if this Court were to follow the approach of *Dunkin' Donuts, Inc.,* 2001 WL 34079319, and *Pendlebury,* 2005 WL 2105024, this Court would still conclude that the Government's Motion to Compel should be granted because: (1) the information has been shown to be relevant, as noted above; and, (2) the information is not otherwise readily available because Claimant has refused to provide the information pursuant to the Government's Request for Production, and he renewed his objection to such disclosure at his deposition. *See Pendlebury,* 2005 WL

2105024 at *2 (denying motion to compel where the defendant failed to show a compelling need for the tax returns because the information was readily available through other means, such as interrogatories and depositions); *Dunkin' Donuts, Inc.,* 2001 WL 34079319 at *2 (granting motion to compel where (1) the tax returns were relevant to the plaintiff's claim that the defendant franchises generated unreported sums of money in violation of the franchise agreement; and, (2) the information was not readily available from other sources).

agreement for interior designing services, that he had no involvement with Zeldin's alleged fraudulent stock sales, and that although Zeldin had offered to pay Claimant a commission for referring people to Zeldin for purchases of stock, no commissions were ever paid. (DE 30, exh. 3, pgs. 44–47, 50–53, 54–59, 60–64, 67–75, 131–142). Moreover, although Claimant failed to testify that he earned money as a result of designing contracts with Schub, Schub testified that she had paid Claimant approximately sixty-five thousand dollars ($65,000.00) for interior designing projects completed by Claimant over a several year period. (DE 30, exh. 3, pgs. 43, 44, 45–59, 96; DE 30, exh. 4, pgs. 5, 9, 36–37). There can be no doubt that Claimant's tax returns bear on such issues. *See Oppenheimer Fund, Inc.,* 437 U.S. at 351, 98 S.Ct. 2380.

Third, as the party resisting discovery, Claimant has failed to show that his tax records are not relevant. *See Dunkin' Donuts, Inc.,* 2001 WL 34079319, *2.

Fourth and finally, by testifying in the manner in which he did, Claimant has placed his income at issue. As such, equitable considerations call for the disclosure of Claimant's tax returns. *See Bonanno Organized Crime Family of La Cosa Nostra,* 119 F.R.D. at 627, n. 2; *Cymaticolor Corp.,* 106 F.R.D. at 548, n. 2.

Accordingly, **IT IS HEREBY ORDERED AS FOLLOWS:**

(1) Plaintiff's Motion to Compel Tax records is **GRANTED.** (DE 30). Claimant shall provide the tax records no later than FIVE (5) days from the date of this Court's order.

(2) Claimant's Request for Hearing is **DENIED.** (DE 33).